# United States Court of Appeals
## For the First Circuit

No. 12-2188

HAROLD ORTIZ-GRAULAU,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Howard, Selya and Lipez,
Circuit Judges.

Rachel Brill for petitioner.
John A. Mathews II, Assistant United States Attorney, with
whom Rosa Emilia Rodríguez-Velez, United States Attorney, and
Nelson Pérez-Sosa, Assistant United States Attorney, Chief,
Appellate Division, were on brief, for respondent.

June 20, 2014

**HOWARD, Circuit Judge**.  Petitioner Harold Ortiz-Graulau ("Ortiz"), currently serving a 180-month sentence following his federal child pornography conviction, appeals the district court's denial of his 28 U.S.C. § 2255 petition for collateral relief. After review, we affirm the district court's denial of the petition.

I. Factual and Procedural Background

In 2005, a federal grand jury returned a two-count indictment charging Ortiz with possessing sexually explicit photographs of a minor, 18 U.S.C. § 2252(a)(4)(B), and exploiting a minor for the purpose of producing the photographs, 18 U.S.C. § 2251(a).  The child pornography at issue here consists of sexually explicit photographs of a female referred to in the record as "SMN."[1]  Ortiz and SMN were living together and were in a lawful, consensual relationship.  At the time that the photographs were taken, SMN was fourteen years old and Ortiz was thirty-eight.  The age of consent for sexual relations in Puerto Rico during the relevant period was fourteen.[2]  When Ortiz and SMN went to a local Walgreens to develop rolls of film, employees alerted authorities to what they believed were sexually explicit photographs of a minor.  A subsequent search

_____

[1] Although SMN is no longer a minor, we refer to her by her initials, as the district court did, to protect her identity.

[2] See P.R. Laws Ann. tit. 33, § 4061(a) (2002).  The age of consent has since been raised to sixteen.  See Penal Code of 2004 Art. 142.

of Ortiz's home revealed over fifty sexually explicit photographs of SMN. Upon Ortiz's arrest, he admitted that he had a sexual relationship with SMN and that he was aware that she was fourteen. Prior to trial, Ortiz pled guilty to possessing sexually explicit photographs of a minor. He went to trial on the production count.

The production statute criminalizes the conduct of a person who "employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a). The statute defines a minor as anyone under eighteen. Id. § 2256(1).

Before trial, Ortiz filed a motion to dismiss the charges as violating his right to privacy due to the "marital-like" relationship between Ortiz and SMN. The district court denied the motion, largely on the grounds that Ortiz and SMN were not formally married, there is no common law marriage in Puerto Rico, and they could not have been married without SMN's parents' consent. The government filed a motion in limine seeking to prohibit Ortiz from presenting any evidence making reference to a consensual or marital-like relationship between Ortiz and SMN or evidence related to Puerto Rico law governing the age of consent. The district court summarily granted the motion in limine over Ortiz's objection. Ortiz submitted a written proffer explaining that, but for the ruling on the motion in limine, he would have presented six

witnesses, including neighbors and family of Ortiz and of SMN, to testify that Ortiz and SMN were cohabiting for approximately six months and that Ortiz introduced SMN to family and friends as if she were his wife. He also noted that he would have introduced the fact that the age of consent in Puerto Rico at the time was fourteen. Ortiz received permission from the court to subpoena SMN to proffer her testimony outside the presence of the jury only for the purpose of preserving the record for appeal.

SMN's testimony was brief and fragmentary. Even so, the testimony confirmed that the relationship was consensual. Upon questioning from defense counsel, she characterized the relationship as that of a "normal couple" and she described personally wanting the pictures. She testified that she was the one who "went to" Ortiz about taking the photos, and that the photographs were taken for no particular purpose. When defense counsel asked SMN whether she had been coerced, enticed, induced, persuaded, used or employed to take the pictures, SMN responded "no" to each. SMN's testimony also confirmed that Ortiz took many of the sexually explicit photos of her. Ortiz and the district court both reiterated that the proffer was merely to preserve the record for appeal, given the court's prior ruling on the motion in limine that evidence of a consensual relationship was irrelevant. After the proffer, Ortiz did not make any argument in favor of the admissibility of SMN's testimony.

Ortiz timely appealed his conviction, challenging the sufficiency of the evidence and various alleged errors at trial and in sentencing. We affirmed Ortiz's conviction and sentence in United States v. Ortiz-Graulau ("Ortiz I"), 526 F.3d 16 (1st Cir. 2008). We found the evidence at trial to be sufficient. At the time, we declined to rule on the precise definition of the term "use" in the statute, although we held that the term "use" included at least instigation. We found that, given the age difference between Ortiz and SMN and Ortiz's participation in the sexual contact and photography, a jury could have reasonably inferred that Ortiz "instigated at least some of the conduct." Ortiz I, 526 F.3d at 19. We also held that the number of photographs taken and the poses in the photographs were sufficient evidence to support the conclusion that some of the conduct occurred in order to make photographs.

Although we held that the evidence at trial was legally sufficient to support the verdict, we expressed concerns about the district court's reasoning in excluding SMN's testimony in reliance on the prior ruling on the motion in limine. We noted that while consent was not a legal defense under the statute, "SMN was perfectly entitled to testify as to facts bearing directly on a specific statutory element, namely, whether Ortiz 'employ[ed], use[d], persuade[d], induce[d], entice[d], or coerce[d]' her in the conduct that was then photographed," including "factual information

about who suggested the photographs and the conduct being photographed and related background." Ortiz I, 526 F.3d at 20. However, because this argument was not pursued on appeal, we suggested that it was properly left for collateral attack under 28 U.S.C. § 2255 with the assistance of new counsel. This petition followed.

In this petition, Ortiz collaterally attacks his conviction on four grounds: (1) he received ineffective assistance of counsel, (2) the trial court violated his Sixth Amendment right to compulsory process and his Fifth Amendment right to due process by not allowing him to present a defense, (3) the conduct underlying his conviction was constitutionally protected, and (4) he is actually innocent. The district court rejected Ortiz's petition. It found that Ortiz's counsel had not been deficient at trial, noting that counsel filed several motions on Ortiz's behalf and made efforts to include SMN's testimony. The district court held that even if counsel had been deficient on appeal in not challenging the district court's exclusion of SMN's testimony, this deficiency did not prejudice the outcome. The district court, citing the reasoning in United States v. Sirois, 87 F.3d 34, 41 (2d Cir. 1996), interpreted the term "use" in the production statute as meaning "to employ or avail oneself of the use of a minor in order to create a visual depiction of sexually explicit conduct." Ortiz-Graulau v. United States, CIV. 09-1387 JAG, 2012 WL 3308877, at *8

(D.P.R. Aug. 13, 2012).  Given this meaning of "use," the district court found no prejudice.  The district court rejected Ortiz's other due process claims and granted a certificate of appealability as to all four issues.

II. Analysis

A person serving a sentence in federal custody may petition the sentencing court for collateral relief to "vacate, set aside or correct the sentence" as being in violation of the Constitution or federal law.  28 U.S.C. § 2255.  On appeal from the denial of a petition for relief pursuant to 28 U.S.C. § 2255, we review the district court's legal determinations de novo and findings of fact for clear error.  Parsley v. United States, 604 F.3d 667, 671 (1st Cir. 2010).

A. Ineffective Assistance of Counsel

In order successfully to claim ineffective assistance of counsel, Ortiz must show that his attorney's performance was deficient, and that the deficient performance prejudiced his defense.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  Deficient performance must fall below "an objective standard of reasonableness."  Id. at 688; see also Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010).  In determining prejudice, we look to whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to

undermine confidence in the outcome." Strickland, 466 U.S. at 694.
If a defendant falls short in showing either deficiency or
prejudice, the claim fails. See Companonio v. O'Brien, 672 F.3d
101, 110 (1st Cir. 2012). We need not go through the two prongs of
the ineffectiveness claim in a particular order. Where it is more
efficient to dispose of an ineffectiveness claim on prejudice
grounds, a court should follow that course. Strickland, 466 U.S.
at 697. We do so here.

The statute at issue applies to a person who "employs, uses,
persuades, induces, entices, or coerces" a minor to engage in
sexually explicit conduct for the purpose of producing a visual
depiction of the conduct. 18 U.S.C. § 2251(a). In Ortiz I, we
noted that we were concerned that SMN's excluded testimony may have
been relevant to whether or how Ortiz's conduct was encompassed by
each of these statutory terms. 526 F.3d at 20-21. Our inquiry in
the present appeal concerns, as we have said, whether there has
been a showing of prejudice. Thus, the inquiry focuses not on the
relevance of SMN's testimony to a jury's evaluation of any of these
statutory terms, but rather on whether her testimony could have
supported a legally permissible defense to each of these statutory
terms. We therefore focus on the statutory term to which SMN's
testimony has the least relevance, the allegation that Ortiz "used"
SMN.

Ortiz's petition focuses largely on the alleged deficiencies of counsel and spends little time on the prejudice analysis, despite the district court's extensive discussion of the meaning of the word "use" in § 2251(a) as being essential to the question of prejudice. Ortiz argued in his motion for judgment of acquittal before the district court that "use" should be defined as requiring not just SMN's appearance in the photograph, but also an affirmative act of deception. Ortiz does not further address the definition of "use" in this petition. As the district court anticipated, however, the prejudice analysis in this case rises and falls on the meaning of this statutory term.

At the time of trial, we had not yet had an occasion to decide the meaning of the term "use" in the context of this statute, but the timing of our decision does not affect the analysis. "A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-13 (1994). As explained below, we conclude that the proffered factual testimony concerning the relationship between Ortiz and SMN and concerning the specific circumstances surrounding the production of the sexually explicit photographs does not support a lawful defense to whether Ortiz "used" SMN within the meaning of the production statute, § 2251(a). Ortiz's

petition for relief due to ineffective assistance of counsel was therefore properly denied for failing to establish prejudice.

The meaning of the term "use" in this statute is a question of first impression in this circuit. All of the other circuits that have addressed this issue, however, have held that the "use" element in § 2251 is met when a defendant intentionally films or photographs a minor's sexually explicit conduct. See, e.g., United States v. Engle, 676 F.3d 405, 418 n.9 (4th Cir. 2012); United States v. McCloud, 590 F.3d 560, 566 (8th Cir. 2009); United States v. Sirois, 87 F.3d 34, 41 (2d Cir. 1996). Numerous district courts have also reached this same conclusion. See, e.g., United States v. Wright, No. 1:12-CR-130, 2013 WL 164096 (W.D. Mich. Jan. 15, 2013); United States v. Ritter, No. 11-CR-40037-FDS, 2012 WL 1965404, *6 (D. Mass. May 30, 2012); United States v. Helton, No. CR-07-70-T, 2007 WL 1674196, *5 (W.D. Okla. June 7, 2007), aff'd, 302 F. App'x 842 (10th Cir. 2008). In denying Ortiz's petition, the district court drew on the reasoning in these cases, particularly the Second Circuit's decision in Sirois, 87 F.3d 34. Our own analysis similarly leads us to the conclusion that the statutory definition of "use" is met when a defendant makes a minor the subject of a visual depiction by intentionally photographing the minor engaging in sexually explicit conduct.

In adopting this definition, we are informed by the Supreme Court's analysis in Bailey v. United States, 516 U.S. 137 (1995), in which the Court held that "use" of a firearm required more than mere possession. The Court in Bailey looked to the "ordinary or natural" meaning of the term "use," and found that "use" can mean "to convert to one's service," "to employ," "to avail oneself of," and "to carry out a purpose or action by means of." Id. at 145 (quoting Smith v. United States, 508 U.S. 223, 228-29 (1993)). The Court held that "use" of a firearm requires "active employment" of the firearm. Id. at 143 (emphasis omitted). This understanding of "using" a minor grafts easily onto the conduct at issue here. See Sirois, 87 F.3d at 41 ("There is undoubtedly an active component to the notion of 'use.' But that component is fully satisfied for the purposes of the child pornography statute if a child is photographed in order to create pornography."). Ortiz admitted taking at least some of the photographs, and we held on direct appeal that there was sufficient evidence that some of the sexual conduct was engaged in for the purpose of photographing it. Ortiz I, 526 F.3d at 19. The statutory definition of "use" is met when a defendant personally films or photographs a minor engaged in sexually explicit conduct if the defendant intends to make such a

-11-

depiction.[3]  Ortiz's conduct here easily falls within this definition of "use."[4]

In enacting 18 U.S.C. § 2251, "Congress intended a broad ban on the production of child pornography and aimed to prohibit the varied means by which an individual might actively create it." United States v. Poulin, 631 F.3d 17, 23 (1st Cir. 2011).  The goal of this statute is to "eliminate the market for the sexual exploitative use of children."  United States v. Morales-de Jesús, 372 F.3d 6, 11 (1st Cir. 2004) (internal quotation mark omitted). The inclusion of multiple similar verbs in the statute illustrates Congress' intent to reach as broad as possible a range of ways that a defendant might actively be involved in the production of

---

[3] We need not delve into legislative history to arrive at this common sense understanding of the term "use," though we note that this plain meaning of "use" is reflected in similar usage in the legislative history of this statute and prior court decisions. See H.R. Rep. 98-536, at 4 (1984), as reprinted in 1984 U.S.C.C.A.N. 492, 495 (referring to using children as performers in or subjects of photographs); S. Rep. No. 95-438, at 5 (1977), as reprinted in 1978 U.S.C.C.A.N. 40, 42-43 (same); see also New York v. Ferber, 458 U.S. 747, 758 (1982)("[T]he use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child.").

[4] While we need not limn the outer bounds of "use" here, we note that whereas "use" of a firearm typically, although not necessarily, involves physical handling of the firearm, "use" of a minor as the subject of a photograph need not require physical handling of the minor.  A minor can actively be used as the subject of a photograph even unwittingly.  See, e.g., United States v. Finley, 726 F.3d 483, 495 (3d Cir. 2013) (noting in the context of using hidden cameras to film a minor that "a perpetrator can 'use' a minor to engage in sexually explicit conduct without the minor's conscious or active participation").

sexually explicit depictions of minors.  Some of these acts may involve deception, violence, or otherwise be an independently unlawful act, but they need not be so long as the acts are done with the intent of making a visual depiction of a minor engaging in sexually explicit conduct.

We note that despite the similarity of the terms in the statute, defining "use" as we do today does not render the other terms superfluous.  See United States v. Ven-Fuel, Inc., 758 F.2d 741, 751-52 (1st Cir. 1985).  "Use" reaches a defendant's active involvement in producing the depiction even if the interpersonal dynamics between the defendant and the depicted minor are unknown. Inclusion of the term "use" in the statute permits the conviction of a defendant who was actively and directly involved in producing a sexually explicit depiction of a minor even in the absence of a complaining witness or even without being able to identify the specific minor.  In contrast, the terms employ, persuade, induce, entice, and coerce reach various types of external pressure that a defendant might apply on a minor to get him or her to engage in sexually explicit conduct.  These terms could reach a defendant's conduct even if the pressure were remotely applied and the defendant had no involvement in any actual filming or photography, so long as that pressure were applied with the intent to cause a minor to be visually depicted in a sexually explicit manner.

Given this definition of "use," any facts about the consensual and allegedly non-exploitative nature of the relationship between Ortiz and SMN or about the circumstances in which the photographs were taken could not have supported a legally permissible defense to whether Ortiz "used" SMN. We need not determine whether Ortiz's counsel's failure to argue about the relevance of SMN's testimony to terms other than "use," such as "coerce" or "induce," was deficient. Even if a jury had heard SMN's testimony, at most it would have found that some of the statutory terms, such as "coerce" or "induce," had not been proved. There is no reasonable probability, however, that a jury would have acquitted on "use" while following the law. Cf. United States v. McCloud, 590 F.3d 560, 566 (8th Cir. 2009) (defendant in § 2251(a) prosecution testified about nature of relationship with the minor and details surrounding the taking of the photographs, thereby supplying the "missing element" of whether he was the one who photographed her).

Whether hearing the additional facts of the consensual and lawful relationship may have led a jury to ignore the meaning of the term here and to acquit on a basis other than the law does not change the prejudice analysis. "An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like." Strickland, 466 U.S. at 695. See also Wilkins v. United States, No. 13-1637, slip op. at 13 (1st Cir. June 3, 2014)

-14-

("[T]here is no principled way in which we can rely on a petitioner's hope of jury nullification to find prejudice.").[5] Even if there is a possibility that a jury would have reached a different outcome if counsel had presented the testimony at issue here, the prejudice inquiry does not allow the defendant to "receive a windfall as a result of the application of an incorrect legal principle or a defense strategy outside the law." Lafler v. Cooper, ___ U.S. ___, 132 S. Ct. 1376, 1387 (2012).

Ortiz has not shown any prejudice, and therefore his ineffective assistance of counsel claim fails.

### B. Right to Present a Defense

Ortiz next argues that the district court prevented him from putting on a defense by excluding SMN's testimony and the testimony of other witnesses concerning the nature of the couple's

---

[5] The possibility that a jury may have acquitted despite the language of the statute if it learned about the full context in which the photographs were taken is irrelevant to the prejudice inquiry. However, it may be relevant to the government's calculation of how to use its prosecutorial discretion. When Congress passed this legislation, the Senate Report noted that behavior technically within the bounds of the statute may be "more appropriately the subject of state or local concern," and stated that "the committee fully intends that federal prosecutors will wisely exercise their discretion." 10 S. REP. 95-438, at 16 (1977), as reprinted in 1978 U.S.C.C.A.N. 40, 54. We do not know the calculus that went into the charging decision in this case. We note again, however, that given the severe sentences attendant to this offense, the government might be expected to consider carefully "whether this statute is the proper way to deal with family-related delinquencies ordinarily governed by local law." Ortiz I, 526 F.3d at 22.

relationship and the circumstances surrounding the taking of the photographs. He claims that the exclusion of this evidence violates his Fifth Amendment right to due process and his Sixth Amendment right to compulsory process.

In Ortiz I, we expressed concern about the basis on which the district court excluded SMN's testimony, as that testimony would have been relevant to some of the statutory elements such as whether Ortiz induced or coerced her to engage in sexually explicit conduct, but we noted that this was not argued on appeal. We need not reach the question of whether the district court's evidentiary rulings may have amounted to constitutional error or whether the issue has been waived, however, because any error was harmless. On collateral review, the inquiry is whether any trial error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 638 (1993) (internal quotation mark omitted). Given our holding on the meaning of "use" in this statute, any error that the district court made in excluding such testimony did not have a substantial and injurious effect on the jury's verdict.

C. Conduct Constitutionally Protected

In addition to attacking the exclusion of particular evidence in his case, Ortiz also challenges the applicability of this statute to his conduct. He claims that his conviction violates his Fifth Amendment right to due process because his relationship with

SMN and the photographs at issue here should be constitutionally protected. His argument necessarily suggests that sexually explicit photographs taken within a lawful, consensual relationship between an adult and a minor should be immune from regulation by the federal child pornography laws.

Ortiz relies heavily on our dicta in <u>United States</u> v. <u>Morales-de Jesús</u>, 372 F.3d 6 (1st Cir. 2004), in which we rejected a defendant's as-applied Commerce Clause challenge and upheld the constitutionality of § 2251(a) as a valid exercise of Congress' power to regulate local activity in order to eliminate the interstate child pornography market. We emphasized that the private or non-economic nature of sexually explicit photographs of a minor is irrelevant, although we kept open the possibility of a future as-applied challenge based on either the Commerce Clause or constitutional privacy concerns. <u>Id.</u> at 18. We suggested that factors such as the age of the minor, the relationship between the minor and the defendant, the nature of the sexually explicit conduct and the visual depiction of the conduct may be relevant to a future as-applied claim, whereas the private and non-economic nature of the conduct is definitely not. <u>Id.</u>

We are unpersuaded that the case before us raises constitutional concerns.[6] While consensual sexual activity between

---

[6] In <u>Ortiz I</u>, in response to the claim that the jury should have been told about the consensual nature of the relationship, we allowed for the possibility that Congress may not have intended the

-17-

adults is constitutionally protected, see, e.g., Eisenstadt v. Baird, 405 U.S. 438, 453 (1972), a minor's willing participation in sexual conduct is not, see, e.g., Lawrence v. Texas, 539 U.S. 558, 578 (2003) (expressly excluding minors from its holding that the due process clause protects private, consensual sexual activities between adults). For example, statutory rape laws throughout the country criminalize sexual contact with minors even when the minor willingly participates. See, e.g., Richard A. Posner & Katharine B. Silbaugh, A Guide to America's Sex Laws, 44-64 (1996). This protective reasoning extends to regulating child pornography. See United States v. Fletcher, 634 F.3d 395, 403 (7th Cir. 2011) ("Congress may legitimately conclude that even a willing or deceitful minor is entitled to governmental protection from 'self-destructive decisions' that would expose him or her to the harms of child pornography." (quoting United States v. Malloy, 568 F.3d 166, 175 (4th Cir. 2009))). The government's compelling interest in "safeguarding the physical and psychological well-being of a minor" can sustain legislation "aimed at protecting the physical and emotional well-being of youth even when the laws have operated in the sensitive area of constitutionally protected rights." New York v. Ferber, 458 U.S. 747, 756-57 (1982) (internal quotation marks omitted). Ortiz does not press the potential issue of privacy

---

statute to reach married couples' activities. Since Ortiz and SMN were not married, we did not resolve this issue. 526 F.3d at 20.

rights or engage the particular question of when, if at all, visual depictions of sexual conduct arising from a lawful relationship between a minor and an adult is constitutionally protected. Instead, he simply makes the general, conclusory statement that his conduct is of the type that "should be protected" by "constitutional concerns."

While Ortiz claims that the Morales-de Jesús factors favor his defense in every way, we disagree. With respect to age of the minor, at the time of SMN's relationship with Ortiz she had just barely turned fourteen. As to the nature of the sexually explicit conduct, the conduct here included repeated vaginal and oral intercourse. Concerning visual depictions, the police found over fifty sexually explicit photos of SMN. Finally, while the record may support Ortiz's claim that SMN was willingly engaged in a relationship with him, the record also suggests that "the photographs, as SMN's mother made clear, are not a full measure of the harm done to SMN's life by Ortiz'[s] drawing her into the relationship." Ortiz I, 526 F.3d at 22.

Our decision in Morales-de Jesús left the door open to the possibility that the statute as applied could be unconstitutional.[7]

_____

[7] This opening, however, may be an increasingly narrow one. At the time that Morales-de Jesús was decided, two circuits had granted relief in as-applied Commerce Clause challenges to this statute. See United States v. Corp, 236 F.3d 325 (6th Cir. 2001), abrogated by United States v. Bowers, 594 F.3d 522, 529 (6th Cir. 2010); United States v. McCoy, 323 F.3d 1114 (9th Cir. 2003), overruled by United States v. McCalla, 545 F.3d 750, 756 (9th Cir.

-19-

Even if such an argument remains viable under some set of facts, the facts of this case do not make out a claim of unconstitutionality.

D. Actual Innocence

Finally, Ortiz argues that he was convicted despite his innocence because he did not willfully violate the law. In arguing this, Ortiz focuses on the fact that he did not know that the age of consent in Puerto Rico could be different from the relevant age of majority under the federal child pornography statutes. We previously ruled on this issue in Ortiz I, when we held that "neither the statute nor precedent suggests that this is a rare instance in which ignorance of the law is a defense." Ortiz I, 526 F.3d at 19. Federal law, which defines a minor as anyone under eighteen, controls here. See 18 U.S.C. § 2256. The difference between the federal age of majority in this statute and the local commonwealth age of consent to engage in sexual conduct does not affect this determination. See United States v. Fazal-Ur-Raheman-Fazal, 355 F.3d 40, 47 (1st Cir. 2004) ("That [the defendant] might have been ignorant of [the law] or confused about Congress's authority to prohibit conduct not proscribed by state law is insufficient to prove a deprivation of due process."); see also United States v. Bach, 400 F.3d 622, 628-29 (8th Cir. 2005)

2008). Both cases have since been overruled in light of Gonzales v. Raich, 545 U.S. 1 (2005), due to their erroneous understanding of the Commerce Clause.

-20-

(upholding conviction under § 2251(a) where minor had reached the local age of consent); United States v. Lebowitz, 676 F.3d 1000, 1012 (11th Cir. 2012) (per curiam) (rejecting defendant's vagueness challenge that he had insufficient notice where local age of consent is lower than that in § 2251). To be found guilty, Ortiz did not need to intend to break the law. The elements of § 2251(a) were met by his intentionally taking sexually explicit photographs of person he knew was a minor. Ortiz's argument that he is actually innocent therefore fails.

III. Conclusion

For the reasons stated above, we **affirm** the district court's denial of Ortiz's petition for collateral relief.