*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
CRISFIELD, HOLIFIELD, and LAWRENCE
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Vincent D. TAMAN, Jr.**
Lance Corporal (E-3), U.S. Marine Corps
Appellant

**No. 201900175**

Decided: 11 December 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Mark D. Sameit

Sentence adjudged 1 February 2019 by a general court-martial convened at Marine Corps Base Camp Foster, Okinawa, Japan, consisting of officer and enlisted members. Sentence approved by the convening authority: confinement for six months and a bad-conduct discharge.[1]

_____

[1] The convening authority disapproved the reprimand adjudged by the members.

For Appellant:
*Major Mary Claire Finnen, USMC*
*Lieutenant Commander Kevin R. Larson, JAGC, USN*[2]
*Lieutenant Commander Hannah F. Eaves, JAGC, USN*[3]

For Appellee:
*Lieutenant Joshua C. Fiveson, JAGC, USN*
*Major Kerry E. Friedewald, USMC*

Judge LAWRENCE delivered the opinion of the Court, in which Chief Judge Emeritus CRISFIELD and Senior Judge HOLIFIELD joined.

————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 30.2.**

————————————

LAWRENCE, Judge:

Appellant was convicted, contrary to his pleas, of one charge of knowingly and wrongfully receiving and viewing child pornography and another charge of soliciting and advising the production of child pornography, both in violation of Article 134, Uniform Code of Military Justice [UCMJ].[4] In his sole assignment of error [AOE], Appellant avers that this Court should use its Article 66(c) authority to disapprove as unjust his convictions for solicitation, receiving, and viewing child pornography of Ms. Wilson,[5] a sixteen-year-old girl, when he could have lawfully engaged in a physical sexual relationship with the same individual, raising for the first time on appeal that his

---

[2] The Court granted Lieutenant Commander Larson leave to withdraw as appellate defense counsel on 6 August 2020.

[3] The Court granted Lieutenant Commander Eaves leave to withdraw as appellate defense counsel on 7 October 2020.

[4] 10 U.S.C. § 934.

[5] All names in this opinion, other than those of the judges and counsel, are pseudonyms.

constitutional rights to free speech and privacy were violated. We find no prejudicial error and affirm.

# I. BACKGROUND

Appellant met Ms. Wilson when he was a high school senior platoon commander in Junior Reserve Officers' Training Corps [JROTC] and she was a freshman in his platoon. This shared involvement in JROTC was the extent of their in-person or online contact until two years later when he initiated contact with then-sixteen-year-old Ms. Wilson by way of a social media platform. All the offenses in question took place while Appellant was a twenty-year-old active duty Marine stationed in Okinawa, Japan.

Initially, their conversations were innocuous, but they soon turned sexual in nature. Appellant sought to explore more than mere conversation with Ms. Wilson. She testified that she resisted several of Appellant's requests for her to provide nude pictures of herself to him, but she eventually relented, supplying him a picture of her naked buttocks on another online platform thinking it would be "one and done."[6] Because of Appellant's continuing popularity in her high school, Ms. Wilson felt she was the beneficiary of more attention and popularity due to her online relationship with Appellant being known to others. While she did not want to take and send nude pictures, she knew she risked her elevated social status amongst her high school classmates if she did not capitulate.

Appellant persisted in requesting nude pictures of sixteen-year-old Ms. Wilson. He asked for pictures of her exposed breasts. She refused, but eventually relented. Then he sought pictures of her exposed vagina. She again refused, but succumbed to his requests and sent him ten to fifteen pictures that met his request. He then requested photographs of her digitally penetrating her vagina. She provided those as well.

While the platform on which she had been sending Appellant the nude photographs quickly deletes images once viewed, Appellant asked Ms. Wilson if upon receipt he could take a screenshot to preserve these nude images of her vagina. She gave him permission, reasoning that in doing so she "hop[ed] that if he had them on his phone he would stop asking [her] for more."[7] Due

---

[6] R. at 392-94.

[7] *Id.* at 400.

to a notification that returned to the other party, she knew that he had performed a screenshot of the nude pictures she had sent.

Next, Appellant asked that she engage in mutual masturbation with him by means of an online video telephone application. She reluctantly agreed and they did this on approximately thirty occasions. Despite being a high school student, and to accommodate his Marine Corps working schedule in Japan, Ms. Wilson would stay up into the wee hours of the morning at her family home in the continental United States to send these online nude and explicit live-streamed videos. Appellant managed the entire production of having video sex with Ms. Wilson—from instructing her on how to masturbate to light management and camera placement in order for him "to get a better look"[8] in viewing her naked body and sexual acts.

Ultimately, this was uncovered when Ms. Wilson's parents returned home late one night and her father, a Service Member, noticed a light from underneath her bedroom door. With her door locked—a violation of family rules—and her delay in opening the door while she got dressed from what was an in-progress explicit video call to Appellant of herself masturbating, her father demanded her cell phones. As the result of seeing their earlier social media messages of a sexual nature, Appellant's demand for nude pictures of his daughter, and a photograph of her scantily-clad buttocks and another of her naked with bare breasts, Mr. Wilson notified his command who put him in touch with military and then local civilian law enforcement.

## II. DISCUSSION

### A. Standard of Review

Appellant challenges his conviction as unjust, invoking this Court's statutory charge under Article 66(c), UCMJ, that we must "affirm only such findings of guilty . . . as [we] find[ ] correct in law and fact and determine[ ], on the basis of the entire record, should be approved." We review de novo statutory interpretations as questions of law.[9]

At the root of Appellant's claim is his assertion that Article 134, UCMJ, is unconstitutional as applied to the facts of his case, a matter we consider de

---

[8] *Id.* at 405.

[9] *See United States v. Nerad,* 69 M.J. 138, 142 (C.A.A.F. 2010).

novo through conducting a fact-specific inquiry.[10] However, as neither of Appellant's as-applied constitutional challenges were raised during the course of his trial, we review for plain error, granting relief "only where (1) there was error, (2) the error was plain and obvious, and (3) the error materially prejudiced a substantial right of [an] accused."[11] The Court of Appeals for the Armed Forces [CAAF] has determined that Article 134, UCMJ, is a facially constitutional criminal statute and, as such, to succeed in his as-applied claim, "Appellant must point to particular facts in the record that plainly demonstrate why his interests should overcome Congress' and the President's determinations that his conduct be proscribed."[12] We will first focus on each of his underlying constitutional claims.

## B. Appellant's Solicitation and Advice to Produce Child Pornography and Receipt and Viewing of Child Pornography is not Protected by the First Amendment

Appellant avers that he was in a "long-distance relationship" with Ms. Wilson and the only means by which they could engage in consensual sexual acts as part of their relationship was over the internet.[13] At issue is whether Appellant's repeated solicitation and advice to Ms. Wilson, a sixteen-year-old "minor"[14] for purposes of Article 134, UCMJ, our child pornography statute, seeking her production of still and video images of herself engaged in sexually explicit conduct and his receipt and viewing of those same images are constitutionally protected.

Appellant readily admits that "no court has expressly held that child pornography laws, used to prosecute people in a consensual relationship, violate the Constitution."[15] This Court will not be the first. We uniformly reject Appellant's claims that the Constitution affords protection to one in Appellant's situation engaged in the production, receipt, and viewing of child pornography.

---

[10] *See United States v. Goings*, 72 M.J. 202, 205 (C.A.A.F. 2013) (citing *United States v. Ali*, 71 M.J. 256, 265 (C.A.A.F. 2012)).

[11] *United States v. Sweeney*, 70 M.J. 296, 304 (C.A.A.F. 2011) (citation omitted).

[12] *Goings*, 72 M.J. at 205 (citations omitted).

[13] Appellant's Brief at 2.

[14] *Manual for Courts-Martial, United States* (2016 ed.), pt. IV, ¶ 68b.c.(4) ("'Minor' means any person under the age of 18 years.").

[15] Appellant's Brief at 6.

In *New York v. Ferber*,[16] the United States Supreme Court considered a state statute criminalizing the pornographic display of children. The New York Court of Appeals had held the statute violated the First Amendment. In the "first examination of a statute directed at and limited to depictions of sexual activity involving children,"[17] the Court contrasted unprotected obscenity from protected expression: "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem."[18] Not only was it "implicit in the history of the First Amendment" that obscenity was "utterly without redeeming social importance," but legislation from the States and Congress, and even international agreements all provided examples of its legal proscription.[19]

While the New York Court of Appeals applied the obscenity standard from *Miller v. California*[20] to delineate between protected and unprotected expression, the Supreme Court found its previous caution of the "inherent dangers of undertaking to regulate any form of expression"[21] did not apply in the same way to *child* pornography, itself an area where the government was "entitled to greater leeway in the regulation of pornographic depictions of children."[22] Specifically, the *Ferber* Court found "compelling" the government's interest in "safeguarding the physical and psychological well-being of a minor,"[23] "even when the laws have operated in the sensitive area of constitutionally protected rights."[24] "The prevention of sexual exploitation

---

[16] 458 U.S. 747 (1982).

[17] *Id.* at 753.

[18] *Id.* at 754 (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942)) (internal quotation marks omitted).

[19] *Id.* (citing *Roth v. United States*, 354 U.S. 476 (1957)) (internal quotation marks omitted).

[20] 413 U.S. 15 (1973).

[21] *Ferber*, 458 U.S. at 755 (quoting *Miller*, 413 U.S. at 23).

[22] *Id.* at 756.

[23] *Id.* at 756-57 (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982)) (internal quotation marks omitted).

[24] *Id.* at 757 (citing *Prince v. Massachusetts*, 321 U.S. 158 (1944) (upholding a law not allowing a child to distribute literature on the street); *Ginsberg v. New York*, 390 U.S. 629 (1968) (upholding law "protecting children from exposure to nonobscene literature."); *FCC v. Pacifica Foundation*, 438 U.S. 726 (1978) ("the Government's

and abuse of children constitutes a government objective of surpassing importance."[25] Moreover, the Court noted that both legislatures and professional literature found that the "use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child."[26]

Although *Ferber* involved distribution that may have exacerbated the harm, the Court—even in that pre-digital era of film photography and well before internet file sharing and preservation—noted the *production* of visual materials formed a permanent record of the child involved in sex acts such that they "may haunt [the child] in future years, long after the original misdeed took place."[27] In fact, the Court emphasized the legislature's interest in devising laws with real vigor concerning not only the distribution of child pornography, but against those who produced the photographs and videos as these persons were already difficult to flush out. The Court concluded the *Miller* obscenity standard was insufficient to address the scourge of child pornography as it "does not reflect the State's particular and more compelling interest in prosecuting those who promote the sexual exploitation of children."[28]

The Court found child pornography to be "without the protection of the First Amendment."[29] Nonetheless, that still required the proscribed conduct to be sufficiently defined in the law. Specifically, the Court found that the "nature of the harm to be combated requires that the state offense be limited to works that *visually* depict sexual conduct by children below a specified age."[30]

---

interest in the 'well-being of its youth' justified special treatment of indecent broadcasting received by adults as well as children.")).

[25] *Id.* at 757.

[26] *Id.* at 758.

[27] *Id.* at 759 n. 10 (internal citation omitted).

[28] *Id.* at 761.

[29] *Id.* at 764.

[30] *Id.* (emphasis in original). Here the Court noted that states and the federal government then defined a "child" for child pornography purposes as one being under eighteen, seventeen, or sixteen years of age to even those who *appeared* under a specified age or who appeared as a prepubescent. *See id.* at n.17.

While the Court had previously overturned a law criminalizing private possession of (adult) obscene material in *Stanley v. Georgia*,[31] it upheld Ohio's child pornography statute in *Osborne v. Ohio*.[32] The Court reiterated that its holding in *Stanley* was narrow, distinguishing it from *Osborne* where the interest of the state was far more specific: "to protect the victims of *child* pornography . . . [with] hopes to destroy a market for the exploitative use *of children*."[33]

The Court agreed that the legislature had a vitally important interest in protecting child pornography subjects from suffering physiological, emotional, and mental health harm. Therefore, it was "surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand."[34] The Court found this similar to the persuasive argument in *Ferber* where

> [t]he advertising and selling of child pornography provide an economic motive for and are thus an integral part of the production of such materials, an activity illegal throughout the Nation. "It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute."[35]

It also recognized that there were other factors in support of this statute:

> First, as *Ferber* recognized, the materials produced by child pornographers permanently record the victim's abuse. The pornography's continued existence causes the child victims continuing harm by haunting the children in years to come. The State's ban on possession and viewing encourages the possessors of these materials to destroy them. Second, encouraging the destruction of these materials is also desirable because evi-

---

[31] 394 U.S. 557 (1969).

[32] 495 U.S. 103 (1990). Despite the constitutionality of the statute, the Court reversed Osborne's conviction as the state failed to prove the lewdness element.

[33] *Id.* at 109 (emphasis added).

[34] *Id.* at 109-10.

[35] *Id.* at 110 (citing *Ferber*, 458 U.S. at 761-62) (quoting *Giboney v. Empire Storage & Ice. Co.*, 336 U.S. 490, 498 (1949)).

dence suggests that pedophiles use child pornography to seduce other children into sexual activity.[36]

The Court clearly recognized, as do we, that the harm imposed upon a child (or to other children) by being the subject of child pornography does not immediately vanish upon the passage of months or years to a time when that child is no longer a child.

Nor does lawful consent to sexual acts immunize an adult from criminal liability for his separate act of documenting the sex and thereby creating child pornography. In *United States v. Bach,*[37] the appellant argued, unsuccessfully, before the Eighth Circuit Court of Appeals that photos he took of a sixteen-year-old boy masturbating and performing oral sex on him were not criminal because the boy met the legal age of consent concerning the sexual acts. Notably, the court detailed that while the state statute defined the age of consent to sexual activity as sixteen, the federal child pornography statute[38] defined a minor as one under eighteen years of age. In fact, in 1984 Congress changed from sixteen to eighteen the defined age of a minor, expressly to avoid confusion regarding when a particular child appeared to have entered puberty and to better enforce the child pornography law.[39]

Appellant argues that the landscape of free speech protections—and by extension his claims concerning child pornography—was "fundamentally changed"[40] by the Supreme Court's decision in *United States v. Stevens.*[41] In *Stevens,* the Court found the First Amendment free speech guarantees were violated by the federal statute that criminalized not the direct cruelty to animals, but the making, possessing, or sale of depictions of those despicable acts through "crush videos." "The First Amendment provides that 'Congress shall make no law . . . abridging the freedom of speech.' As a general matter, the First Amendment means that government has no power to restrict

---

[36] *Id.* at 111 (internal citation omitted).

[37] 400 F.3d 622 (8th Cir. 2005).

[38] 18 U.S.C. § 2256.

[39] *See Bach*, 400 F.3d at 629 (citing H.R. Rep. No. 98-536, at 7-8 (1983), reprinted in 1994 U.S.C.C.A.N. 492, 498-99).

[40] Appellant's Brief at 14.

[41] 559 U.S. 460 (2010).

expression because of its message, its ideas, its subject matter, or its content."[42] But the Court recognized some distinct exceptions.

> From 1791 to the present, however, the First Amendment has permitted restrictions upon the content of speech in a few limited areas, and has never included a freedom to disregard these traditional limitations. These historic and traditional categories long familiar to the bar—including obscenity . . . and speech integral to criminal conduct—are well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem.[43]

The Court noted that its earlier decision in *Ferber* made clear there were "historically unprotected categories of speech" in which "the evil to be restricted so overwhelmingly outweighs the expressive interests, if any, at stake, that no process of case-by-case adjudication is required," because "the balance of competing interests is clearly struck."[44]

But the Court emphasized that there was much more at stake in child pornography matters: "[t]he market for child pornography was "intrinsically related" to the underlying abuse, and was therefore "an integral part of the production of such materials, an activity illegal throughout the Nation."[45] The Court reinforced that "*Ferber* thus grounded its analysis in a previously recognized, long-established category of unprotected speech, and our subsequent decisions have shared this understanding."[46]

Far from the "fundamental change" claimed by Appellant, *Stevens* and *Brown v. Entm't Merchs. Ass'n,*[47] decided in its next term, show a consistent

---

[42] *Id.* at 468 (quoting *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002)) (internal quotation marks omitted).

[43] *Id.* at 468-69 (internal citations and quotation marks omitted).

[44] *Id.* at 470 (quoting *Ferber*, 458 U.S. at 763-64).

[45] *Id.* at 471 (quoting *Ferber*, 458 U.S. at 759) (internal quotation marks omitted).

[46] *Id.* (citing *Osborne*, 495 U.S. at 110 (noting *Ferber*'s "persuasive" argument concerning the "integral part" that the advertising and sale of child pornography played in its unlawful production); *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249-50 (2002) (distribution and sale "were intrinsically related to the sexual abuse of children," the speech therefore possessing "a proximate link to the crime from which it came") (internal quotation marks omitted)).

[47] 564 U.S. 786 (2011).

approach to First Amendment and content restriction analysis. In *Brown*, the Court considered a First Amendment challenge to a California law prohibiting sales or rentals of "violent" video games to minors and special packaging to reinforce this requirement. The Court reiterated that the *general* rule was that legislatures could not "restrict expression because of its message, its ideas, its subject matter, or its content."[48] But, citing *Stevens*, it reminded that from the ratification of the First Amendment, content of speech has permissibly been restricted "in a few limited areas, and has never included a freedom to disregard these traditional limitations."[49] Specifically, "[t]hese limited areas . . . represent 'well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem.'"[50]

The legislation failed in both *Brown* and *Stevens* because it impermissibly imposed content-based restrictions on speech without establishing that these restrictions targeted a "well-defined and narrowly limited class[ ] of speech" that had been historically proscribed. The *Brown* Court noted that in *Stevens*, there was a long history against the commission of animal cruelty, but none criminalizing its visual representation and sale. So, too, in *Brown* where the Court posited that there was no long national history proscribing representations of violent behavior to minors. "[W]ithout persuasive evidence that a novel restriction on content is part of a long (if heretofore unrecognized) tradition of proscription, a legislature may not revise the judgment of the American people, embodied in the First Amendment, that the benefits of its restrictions on the Government outweigh the costs."[51]

Dissenting in *Brown*, Justice Breyer believed the statute provided only a limited rather than a categorical restriction on speech and should be upheld:

> No one here argues that depictions of violence, even extreme violence, *automatically* fall outside the First Amendment's protective scope as, for example, do obscenity and depictions of child pornography. We properly speak of *categories* of expres-

---

[48] *Id.* at 790-91 (quoting *Ashcroft v. American Civil Liberties Union*, 535 U.S. at 573) (internal quotation marks omitted).

[49] *Id.* at 791 (quoting *Stevens*, 559 U.S. at 468) (internal quotation marks omitted).

[50] *Id.* (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942)).

[51] *Id.* at 792 (quoting *Stevens*, 559 U.S. at 470) (internal quotation marks omitted).

sion that lack protection when, like "child pornography," the category is broad, when it applies automatically, and when the State can prohibit everyone, including adults, from obtaining access to the material within it.[52]

Regarding Appellant's lament that he and Ms. Wilson were merely "show[ing] each other mutual affection in one of the few ways they could"[53] and reiterating that "he never shared or gave the photos to anyone,"[54] we find persuasive *United States v. Hotaling*,[55] in which the Second Circuit Court of Appeals rejected the appellant's assertion that he created and maintained possession of child pornography solely to further his own sexual fantasies without display to others or distribution of the images. The court emphasized that "[t]hese are not mere records of the defendant's fantasies, but child pornography that implicates actual minors and is primed for entry into the distribution chain."[56] Not only had the Supreme Court recognized in *Osborne* that an underground network had been created, but Congress in the PRO-TECT Act of 2003[57] found that greater protections were necessary given that the computer age had spawned new clandestine means to maintain and circulate child pornography between individual traffickers.[58]

---

[52] *Id.* at 842 (Breyer, J., dissenting) (emphasis in original).

[53] Appellant's Brief at 10.

[54] *Id.* at 11. *See also* Appellant's admission that he "never shared the videos with his friends, nor did he distribute or post them online so others could see." *Id.* at 12.

[55] 634 F.3d 725 (2d Cir. 2011).

[56] *Id.* at 730 (citing *Osborne*, 495 U.S. at 110).

[57] Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003.

[58] *Hotaling*, 634 F.3d at 730 (citing the PROTECT Act of 2003, Congressional Findings, Pub. L. No. 108-21, 117 Stat. 650). *See also United States v. Williams*, 553 U.S. 285, 307 (2008) ("Child pornography harms and debases the most defenseless of our citizens. Both the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." Although the Court previously held the preceding statute to be unconstitutionally overbroad concerning the possession and distribution of material pandered as child pornography, without regard to whether it was in fact child pornography, "Congress responded with a carefully crafted attempt to eliminate the First Amendment problems we identified.")

In *Doe v. Boland*,[59] the appellant—for his expert testimony as an attorney in child pornography cases—morphed pictures of actual children's faces onto the bodies of adults performing sexual acts. The Sixth Circuit Court of Appeals found that "the First Amendment offers no sanctuary" from certain forms of speech, to include child pornography.[60] The court rejected the appellant's theory that the harm in child pornography was reliant on distribution to others that was done when that child was still a minor and then only if the depicted child actually suffered psychological harm, reiterating that "[i]n today's digital world, any image is primed for entry into the distribution chain of underground child pornographers."[61] Ultimately, the court found that, even absent any display or transmission beyond the courtroom, Boland's "creation and initial publication of the images itself harmed Jane Doe and Jane Roe, and that is enough to remove Boland's actions from the protections of the First Amendment."[62]

In *United States v. Laursen*,[63] the Ninth Circuit Court of Appeals affirmed the appellant's conviction on production and possession of child pornography under federal law despite the state law allowing for consensual sexual relations between the appellant and a sixteen-year-old girl. Similar to Ms. Wilson's testimony in this case,[64] the girl in *Laursen* testified that she took the "selfie" photographs with her own cell phone even though she "did not like taking pictures like that," but did so at the behest of the appellant.[65] As the court stated, "the prohibited conduct engaged in by Laursen was producing pornographic material involving [the girl], not simply engaging in a sexual relationship with her. And the Supreme Court has made it crystal clear that child pornography is not constitutionally protected."[66] Further, it is

---

[59] 698 F.3d 877 (6th Cir. 2012).

[60] *Id.* at 883 (citing *Stevens*, 559 U.S. 460; *Ferber*, 458 U.S. at 763-64).

[61] *Id.* at 884 (quoting *Hotaling*, 634 F.3d at 730) (citing *Osborne v. Ohio*, 495 U.S. 103, 110 (1990)) (internal quotation marks omitted).

[62] *Id.*

[63] 847 F.3d 1026 (9th Cir. 2017).

[64] *See* R. at 392-96, 400, 402-03.

[65] *Laursen*, 847 F.3d at 1030 (internal quotation marks omitted).

[66] *Id.* at 1034 (citing *Ferber*, 458 U.S. at 763).

clear that "protecting children from sexual abuse and exploitation constitutes a particularly compelling interest of the government."[67]

In *United States v. Rouse*,[68] the appellant was convicted under the federal child pornography statute when he recorded his sexual exploits with his sixteen-year-old partner on his cell phone and sent this video to her, and she responded to him with sexually explicit photographs she had taken of herself. Under his mistaken view of *Stevens*, Rouse asserted that absent a *separate* and *unlawful* sexual act with one under the age of consent, his sexual intercourse with a legally-consenting sixteen-year-old girl could not constitute abuse. The Eighth Circuit Court of Appeals rejected his argument, reiterating *Ferber*'s conclusion that child pornography is "without the protection of the First Amendment."[69]

In *State v. Barr*,[70] the New Hampshire Supreme Court rejected a claim of protected freedom of speech raised by the appellant who legally engaged in a consensual sexual relationship with a sixteen-year-old girl, but was convicted of manufacturing and possessing images of child sexual abuse with that same girl. "*Stevens* did not disturb the Supreme Court's previous holdings that producing and possessing images of an actual child engaged in sexual activity are unprotected by the First Amendment, regardless of whether the underlying sexual activity was legal."[71] The court recognized that "[t]he criminal conduct underlying child pornography [was] not statutory rape, but recording a child engaged in sexual conduct."[72] "Consenting to sexual intercourse and consenting to having that act memorialized, potentially forever, are decisions of different degrees, with corresponding consequences of different magnitudes."[73]

Appellant argues by way of law review articles that "sexting" is merely commonplace youthful expression between those *under eighteen* that should not be criminalized and that his and Ms. Wilson's preexisting platonic

---

[67] *Id.*

[68] 936 F.3d 849 (8th Cir. 2019).

[69] *Id.* at 851 (quoting *Ferber*, 458 U.S. at 764) (internal quotation marks omitted).

[70] 233 A.3d 341 (N.H. 2019).

[71] *Id.* at 349 (citing *Osborne*, 495 U.S. at 111; *Ferber*, 458 U.S. at 765; *Rouse*, 936 F.3d at 852).

[72] *Id.* at 350 (citing *Stevens*, 559 U.S. at 471).

[73] *Id.* (citing *United States v. Fletcher*, 634 F.3d 395, 403 (7th Cir. 2011)).

relationship within a high school JROTC program blossomed into a long-distance relationship in which their options to "show[ ] each other mutual affection" narrowed to this video and photographic medium.[74] We easily reject the first as it merely advocates for future legislation in the face of statutes in place that have passed constitutional muster. We also note that, unlike those sixteen and seventeen years of age, Appellant was a twenty-year-old adult throughout the entirety of his offenses and a United States Marine subject to the UCMJ.[75] As to his second argument, we need not opine on the development of any relationship they shared. Appellant knew Ms. Wilson was a sixteen-year-old high school student living with her parents. Ms. Wilson testified and other evidence showed that Appellant persistently overcame her protestations, instructed her on lighting and camera position, and taught her how to masturbate and provide him with video and still images of her engaging in sexually explicit conduct that he received and viewed.

Under the UCMJ, Appellant could indeed legally have had sex with a consenting sixteen-year-old. However, his *separate acts* as an adult to solicit and advise in the production of and to receive and view images of sexually explicit conduct from this or any other sixteen-year-old minor constitute a criminal offense whether he was stationed in Japan, or even if he was recording the minor while directly engaged in sexual acts with her. His claims of a dating relationship and limitations on their means to share their affection outside of this video and photographic medium do not alter the criminality of his actions. In no way were his actions protected as speech or expression by the First Amendment; rather, they were proscribed under Article 134, UCMJ, as child pornography.

## C. The 5th Amendment Likewise Affords Appellant's Actions no Protection

Appellant additionally argues he enjoyed a right to privacy in the images of Ms. Wilson.[76] He points to the Supreme Court's groundbreaking ruling in

---

[74] Appellant's Brief at 10.

[75] *See United States v. Shea*, No. ACM 39158, 2018 CCA LEXIS 160, *9 (A.F. Ct. Crim. App. Mar. 26, 2018) (unpublished) ("On appeal, Appellant [a twenty- and twenty-one-year-old E-3 at the time of his offenses] refers to commentaries on the prevalence of 'sexting' among teenagers; however, Appellant was not a fellow teenager or high school student.").

[76] *See* Appellant's Brief at 11.

*Lawrence v. Texas*[77] where it found a Texas statute criminalizing same-sex intimate sexual conduct to be in violation of the *Due Process Clause.* There, the Court considered the police response to a report of a weapons disturbance. That prompted police to enter Lawrence's apartment, finding him engaged in anal sex—what the Texas statute considered "deviate sexual intercourse," even when conducted in private with a consensual, same-sex partner.

The Court sought to determine "whether the petitioners were free *as adults* to engage in the private conduct in the exercise of their liberty."[78] Concluding that the law proscribing consensual sodomy was violative of the liberty interest of Lawrence and his partner "to engage in their conduct without intervention of the government," the Court made clear that:

> The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution. It does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter. The case does involve two adults who, with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle.[79]

Ultimately, the Court found the statute unconstitutional as it "furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual."[80]

In light of *Lawrence*, in *United States v. Marcum,*[81] the CAAF was asked to consider the constitutionality of Article 125, UCMJ,[82] at that time the enumerated offense of sodomy. The CAAF noted that Article 125 forbade all forms of sodomy, regardless of consent, and without regard to the location or gender of the participants. As Marcum, an E-6, was acquitted by a panel of members of *forcible* sodomy, he argued that his conviction of *consensual*

---

[77] 539 U.S. 558 (2003).

[78] *Id.* at 564 (emphasis added).

[79] *Id.* at 578.

[80] *Id.*

[81] 60 M.J. 198 (C.A.A.F. 2004).

[82] 10 U.S.C. § 925 (2000).

sodomy with an adult, an E-4 whom he supervised and rated, violated the very liberty interest announced in *Lawrence.*

The CAAF found that "*Lawrence* requires [a] searching constitutional inquiry" that "argues for contextual, as applied analysis, rather than facial review . . . [that] is particularly apparent in the military context."[83] Service Members, the CAAF reiterated, "do not leave constitutional safeguards and judicial protection behind when they enter military service."[84] Yet, by virtue of the military being a "specialized society,"[85] we must also "specifically address[ ] contextual factors involving military life."[86] In addressing an as-applied constitutional challenge, the CAAF crafted a three-part analysis:

> First, was the conduct that the accused was found guilty of committing of a nature to bring it within the liberty interest identified by the Supreme Court? Second, did the conduct encompass any behavior or factors identified by the Supreme Court as outside the analysis in *Lawrence*? Third, are there additional factors relevant solely in the military environment that affect the nature and reach of the *Lawrence* liberty interest?[87]

Much like the CAAF, even if we assumed without deciding that the first prong was satisfied, Appellant's claim unravels on the second prong. We quickly encounter the same distinctions posed in *Lawrence* and reiterated in *Marcum*—"did the conduct involve minors? Did it involve public conduct or prostitution? Did it involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused?"[88] While the CAAF interpreted the latter disqualifying question to apply to Marcum as the supervising noncommissioned officer, here we have Ms. Wilson who—by definition of the statute—was a minor.[89] Her maturity,

---

[83] *Marcum*, 60 M.J. at 205.

[84] *Id.*, citing *United States v. Mitchell*, 39 M.J. 131, 135 (C.M.A. 1994) (quoting *Weiss v. United States*, 510 U.S. 163, 194 (1994) (Ginsburg, J., concurring)).

[85] *Id.* (citation omitted).

[86] *Id.* (citation omitted).

[87] *Id.* at 206-07.

[88] *Id.* at 207.

[89] *See Goings*, 72 M.J. at 207 (citing *Lawrence*, 539 U.S. at 578) ("*Lawrence* did not establish a presumptive constitutional protection for all offenses arising in the context of sexual activity"—in particular, pointing out that minors and those coerced were not part of their consideration in that case.); *United States v. Meakin*, 78 M.J.

the quality of their relationship, geographical hardship, or ability to separately consent to sexual acts is immaterial to the crimes for which Appellant was charged and convicted.

Several Federal, State, and Service courts of criminal appeal have rejected assertions that *Lawrence* extends privacy protection to criminal images of minors that arose from consensual sex acts.[90] We find those holdings persuasive. The same applies in our present case. An adult United States Marine, Appellant reached back from Japan via the relative stealth of the internet to a girl from his former high school with whom he had last interacted when he was a senior and she was a freshman in high school. Even were we to assume they were indeed a couple and mutually consenting to a sexual relationship, Ms. Wilson's age made her a minor with regard to the Article 134, UCMJ, punitive article for child pornography. Separate from any sexual relationship itself, Appellant's actions to solicit and advise the production of child pornography and to receive and view the same were proscribed by statute and not subject to protection under *Lawrence.*

### D. Article 66(c), UCMJ

Following our complete review, we find that Congress made clear both in Title 18 and in the UCMJ that it had no tolerance for the criminal exploitation of children in pornography. The courts have rejected similar arguments of adults who did or could have engaged in a physical relationship, but were

---

396, 403 (C.A.A.F. 2019) (quoting *Seegmiller v. LaVerkin City*, 528 F.3d 762, 771 (10th Cir. 2008)) ("*Lawrence* did not purport to include any and all behavior touching on sex within its purview, and did not 'conclude that an even more general right to engage in private sexual conduct would be a fundamental right.'").

[90] *See Bach*, 400 F.3d at 629 (The Eighth Circuit Court of Appeals rejected the appellant's liberty and privacy arguments, noting that *Lawrence* made clear that its protections were limited to consenting *adults* conducting their activities in private whereas Bach had consensual sex with a minor and the pictures he possessed and transmitted were of that minor who only relented to pose nude after refusing many of Bach's earlier requests.); *Ortiz-Graulau v. United States*, 756 F.3d 12 (1st Cir. 2014) (Rejecting the appellant's Fifth Amendment claim that he was immune from criminal sanction under the child pornography statute when the photographs merely documented the couple's consensual sexual relationship.); *State v. Senters*, 699 N.W.2d 810, 816 (Neb. 2005) ("When a law regulates sexual conduct involving a minor, *Lawrence* is inapplicable."); *Shea*, 2018 CCA LEXIS at *5 ("The right of competent, consenting adults to engage in private sexual activity recognized in *Lawrence* does not extend to protect Appellant's possession of images of 16- or 17-year-old minors engaged in sexually explicit conduct.").

held criminally liable for their acts involved with producing or receiving and viewing child pornography.

We too explicitly reject Appellant's invitation to disregard an abundantly clear law and the intent of its drafters, or to find his convictions were not just. Indeed, we side with the numerous courts which have found on similar facts that satisfaction of the age of consent for a *physical* sexual relationship does not bar the government from properly legislating against the evils of pornography, defining the victim as one below the age of majority.

The intent of Congress and the President in criminalizing pornography involving a child under the age of eighteen years is clearly expressed in Article 134, UCMJ. Appellant has failed to elicit any facts that show why he, an adult Marine, should not be held criminally liable for his actions concerning sixteen-year-old Ms. Wilson.[91]

Appellant's argument, then, takes the form of an equitable plea or prayer for clemency that is beyond the purview of this Court.[92]

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and the sentence are correct in law and fact and that there is no error materially prejudicial to Appellant's substantial rights.[93] Accordingly, the findings and the sentence as approved by the convening authority are **AFFIRMED**.

Chief Judge Emeritus CRISFIELD and Senior Judge HOLIFIELD concur.

---

[91] *See Goings*, 72 M.J. at 205 (citations omitted).

[92] *See Nerad*, 69 M.J. at 140 (C.A.A.F. 2010) (quoting *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 497 (2001)) ("[W]hile Article 66(c), UCMJ, affords a [Service Criminal Court of Appeal, or CCA] broad powers, when faced with a constitutional statute a CCA 'cannot, for example, override Congress' policy decision, articulated in a statute, as to what behavior should be prohibited.'").

[93] UCMJ arts. 59, 66.



FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court