**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, <br><br> v. <br><br> MICHAEL THORVALD LAURSEN, *Defendant-Appellant.* | No. 14-30244 <br><br> D.C. No. 3:13-cr-05634-RJB-1 <br><br><br> OPINION |

Appeal from the United States District Court
for the Western District of Washington
Robert J. Bryan, Senior District Judge, Presiding

Argued and Submitted April 6, 2016
Seattle, Washington

Filed January 30, 2017

Before: Michael Daly Hawkins, Johnnie B. Rawlinson,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Rawlinson;
Concurrence by Judge Hawkins

# SUMMARY[*]

## Criminal Law

The panel affirmed convictions for production and possession of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2252A.

The panel held that the government sufficiently established that the defendant, a 45-year-old man, "used" J.B., a 16-year-old girl, to produce sexually explicit images, as required for a conviction under § 2251(a). The panel wrote that the defendant's theory that he was not the man depicted in the photographs was unconvincing.

The panel rejected the defendant's contentions that §§ 2251 and 2252A are unconstitutionally vague and overbroad, violate the Tenth Amendment, and exceed Congress' power under the Commerce Clause. The panel specifically rejected the defendant's argument that the legality of his relationship with a 16-year-old under Washington state law precluded prosecution under federal law.

The panel held that the district court's evidentiary rulings were sound.

Judge Hawkins concurred. To prevent the statute from being overbroad and unconstitutionally vague, he would require the government to show some taking unfair advantage

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

of the minor to establish "uses" under the statute, but wrote that there were sufficient indicia in this case of a coercive or exploitative element to satisfy the more narrow definition he proposes.

## COUNSEL

Lynn C. Hartfield (argued), Law Office of Lynn C. Hartfield LLC, Denver, Colorado, for Defendant-Appellant.

Helen J. Brunner (argued), First Assistant United States Attorney; Annette L. Hayes, United States Attorney; United States Attorney's Office, Seattle, Washington; for Plaintiff-Appellee.

## OPINION

RAWLINSON, Circuit Judge:

In this appeal we address whether taking consensual nude "selfies"[1] involving a forty-five-year-old man and a sixteen-year-old girl is sufficient to support a conviction for production and possession of child pornography. We conclude that this evidence was sufficient to support the conviction, and we specifically reject the argument made by defendant Michael Thorval Laursen (Laursen) that the legality of his sexual relationship with a sixteen-year-old

---

[1] A Selfie is "an image of oneself taken by oneself using a digital camera . . ." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/selfie (last visited September 22, 2016).

under Washington state law precluded prosecution under federal law.

## I.  BACKGROUND

### A. Investigation of Sexual Abuse and Laursen's Arrest

In July, 2012, Laursen reported to police that a sixteen-year-old girl, referred to in this opinion as J.B., was being prostituted by her uncles.  At the time, J.B. lived with her adoptive father Art Brown.  Laursen and J.B. were involved in a consensual sexual relationship, but neither of the two apprised detectives of that fact.

As part of the investigation into the sexual abuse of J.B., Detective Rodriguez met with Art Brown, J.B.'s adoptive father, who produced J.B.'s laptop, cell phone, and cell phone records.  A forensic examination of J.B.'s laptop revealed "sexually explicit images" of J.B. and Laursen.

Seven months later, Laursen's sister Maureen Gonzales contacted Detective Rodriguez after finding a digital camera in her kitchen that belonged to Laursen. The digital camera's memory card contained sexually explicit photos of J.B. Maureen gave police the digital camera and Laursen's laptop. Maureen acknowledged that Laursen was incarcerated when she gave detectives the digital camera.  Detective Rodriguez subsequently obtained a search warrant for the digital camera and for Laursen's laptop.

A forensic examination of the camera's memory card revealed an array of photos.  Nine pictures on the memory card contained nude images of J.B.   Several non-sexual

pictures were also on the memory card. The laptop did not contain sexually explicit photos.

On February 21, 2013, detectives interviewed Laursen. Detectives informed Laursen that they knew about the nude photos he had taken with J.B. Laursen initially denied taking the nude photos, but later admitted that he took them. When detectives continued questioning Laursen, he asked detectives to stop recording. Laursen then inquired: "This is what this is about, the pictures we took? I can really get in trouble for the pictures I took with her?"

The answer to Laursen's question was a definitive yes. Laursen was charged with one count of production of child pornography in violation of 18 U.S.C. §§ 2251(a) and (e). A subsequent indictment added possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). Laursen waived his right to a jury trial and proceeded to trial before a judge.

## B.  The Bench Trial

Prior to trial, the district court agreed with Laursen that federal jurisdiction in the case was predicated on "a pretty narrow nexus" because there was "no production of pictures over the Internet here, for example, to third parties or anything like that[.]" Nevertheless, the court ultimately determined that production of child pornography with a cell phone that traveled across state lines satisfied "the federal nexus under 2251 and 2252(a) (sic)."

The Government's case against Laursen focused on two sets of photographs. The first set of photographs were found on the hard drive for J.B.'s Toshiba laptop. The second set of

photographs came from the memory card for the digital camera.

J.B.'s testimony was an integral part of the government's case. She testified that she met Laursen in March, 2012, when she was sixteen, and around the time she suffered a drug relapse. J.B. admitted that her memory of that time period was "pretty cloudy," and it was hard to remember details. J.B's and Laursen's sexual relationship began the second time they saw each other. Their relationship became serious when J.B. ran away from home in July, 2012, and commenced living with Laursen. During this period, J.B. and Laursen interacted intimately in a variety of locations, including motels and the homes of Laursen's friends and family. When Laursen took J.B. to the police in July, 2012, J.B. told detectives that Laursen was her best friend and hero. However, J.B. acknowledged at trial that she often skipped school to see Laursen, obtained drugs from Laursen, and ran away from home because of Laursen's influence.

J.B. recalled that she took the sexually explicit photographs found on the Toshiba hard drive with her cell phone before a motel room mirror in August, 2012. J.B. identified Laursen as the man standing next to her in the "selfie" photographs. J.B. testified that she took the photographs with Laursen because he told her they "looked good together" and said "he wanted to take pictures."[2] Although J.B. stated that she did not like "taking pictures like that," she and Laursen took sexually explicit photographs each time they saw each other. However, J.B. deleted some photographs at Laursen's request. J.B. transferred the

---

[2] The photographs depicted both J.B. and Laursen displaying full frontal nudity and other pornographic poses.

sexually explicit photographs from her cell phone to her Toshiba hard drive days after the photographs were taken. J.B. also sent some of the photographs to Laursen's cell phone.

J.B. also identified herself in the sexually explicit photographs found on the memory card. J.B. assumed that Laursen took the photographs because her hair was dyed red in the pictures, which was the same time period when she and Laursen were in a relationship and living together. J.B. also identified a red blanket and brown pillow in the picture that she said belonged to Laursen. In addition, J.B. identified the digital camera in evidence as belonging to Laursen because it had a burn mark on it.[3]

J.B. was adamant that she had never taken sexually explicit photos with anyone other than Laursen. J.B. said she lied when she previously told detectives that her uncle recorded her performing sexual acts. She also lied to police when she said that her uncles sexually abused her. The court precluded Laursen from questioning J.B. about her sexual relationships with other men in 2012.

Laursen's sister Maureen and brother-in-law Adam testified against him at trial. Laursen lived with Maureen and Adam in 2012, and regularly brought J.B. to their home. Maureen and Adam identified the digital camera in evidence as Laursen's property. In early 2013, Maureen picked up the digital camera from among Laursen's belongings in her kitchen area, and looked through the pictures on the camera. Maureen immediately contacted the police when she saw the

---

[3] The photographs were close-ups of J.B.'s vaginal area, including some photographs displaying blood from menstruation.

nude photos of J.B. Maureen testified that the digital camera had not been stolen, and she only told police it was because Laursen had lied to her. Maureen and Adam identified Laursen as the man pictured in the photographs stored on J.B.'s Toshiba hard drive.

To satisfy the jurisdictional element of the offenses, the government called a Toshiba representative who testified that the hard drive in J.B.'s computer was shipped from another country. A Kingston Technology representative similarly testified that the company's camera memory cards are made in Japan and shipped to California.

In his defense, Laursen presented nude photographs he took of himself and submitted in support of his theory that he was not the man in the photographs submitted by the government. The pictures Laursen submitted showed a scar on Laursen's left leg that was absent from the man's leg in one of the photographs submitted by the government. However, there was no evidence presented of when the scar was acquired.

## C.  The District Court's Verdict

The district court found J.B. to be "very believable" and credited her "whole story of how these pictures were taken" because her version was corroborated by other evidence. The court also noted that Laursen's lies to authorities about his sexual relationship with J.B. reflected knowledge that J.B. was a minor.

The court found Laursen guilty of production and possession of child pornography. The court found that Laursen knowingly "used [J.B.] to take part in sexually

explicit conduct for the purpose of producing a visual image of such conduct." The court concluded that Laursen produced or aided and abetted J.B. in producing the photographs, and knew that J.B. was sixteen years old. The court did not consider one of the photographs because of the issue of the scar on Laursen's leg, and also excluded consideration of one nude photograph that was not clearly pornographic.

The Court also determined that Laursen produced the photographs found on his camera's memory card. Finally, the court ruled that the child pornography was produced and possessed using materials that had been transported in interstate commerce.

At sentencing, Laursen argued that the district court should have dismissed his case due to a lack of jurisdiction, because under state law J.B. was "a young woman of legal consensual age and is therefore, by definition, not a child." The court overruled his objection and sentenced Laursen to fifteen years' imprisonment for the production of child pornography, and ten years' imprisonment for possession of child pornography. The judge told Laursen that the sentence was the only one "available" because the judge was "bound by the law, whether I agree with it or not." Laursen filed a timely notice of appeal.

## II. STANDARDS OF REVIEW

We apply *de novo* review to the denial of a motion for acquittal predicated on insufficiency of the evidence presented at trial. *See United States v. Gonzalez*, 528 F.3d 1207, 1211 (9th Cir. 2008). "There is sufficient evidence to support a conviction if, viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . ." *Id.* (citation omitted).

"Following a bench trial, a district court's conclusions of law are reviewed de novo and findings of fact are reviewed for clear error . . . ." *United States v. Temkin*, 797 F.3d 682, 688 (9th Cir. 2015) (citation omitted). A challenge to the constitutionality of a federal statute is a question of law reviewed *de novo*. *See United States v. Lujan*, 504 F.3d 1003, 1006 (9th Cir. 2007). We also review *de novo* whether an evidentiary ruling violates a defendant's constitutional rights. *See United States v. Waters*, 627 F.3d 345, 352 (9th Cir. 2010), *as amended*.

## III.    DISCUSSION

### A.  Sufficiency of The Evidence

Laursen contends that the Government's evidence was insufficient to support a conviction for production of child pornography in violation of 18 U.S.C. § 2251(a).[4]  To secure

---

[4] Section 2251(a) provides in pertinent part:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed,

a conviction under that statute, the government was required to prove beyond a reasonable doubt that: (1) J.B. was a minor (less than eighteen years old); (2) Laursen employed, used, persuaded, induced, enticed, or coerced J.B. to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and (3) that visual depiction was produced using materials that had been transported in interstate or foreign commerce. *See* 18 U.S.C. § 2251(a); *see also United States v. Sheldon*, 755 F.3d 1047, 1049–50 (9th Cir. 2014); *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1008 (9th Cir. 2015) (stating that the federal statute defines a "minor" as a person under the age of eighteen). Laursen's challenge regarding the sufficiency of the evidence is limited to the second element: he contends that he did not "use" J.B. to take part in sexually explicit conduct "for the purpose" of producing visual images.

"The question of whether the pictures fall within the statutory definition is a question of fact as to which we must uphold the district court's findings unless clearly erroneous . . . ." *United States v. Overton*, 573 F.3d 679, 688 (9th Cir. 2009), *as amended* (citation omitted). The term "use" is not defined in § 2251(a). Thus, traditional rules of statutory interpretation are employed, commencing with the plain and common meaning of the word derived from dictionary definitions. *See United States v. Flores*, 729 F.3d 910, 914

---

shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

18 U.S.C. § 2251(a).

(9th Cir. 2013). As one might expect, "use" has many definitions, but the most relevant is "to put into action or service [;] to avail oneself of [;] employ." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/ dictionary/use (last visited August 15, 2016). "[T]he . . . doctrine of noscitur a sociis—the principle that a word is known by the company it keeps" confirms the plain meaning of the term "use." *Flores*, 729 F.3d at 915. Indeed, one of the other means of violating the statute, "employ[ing]" a minor, is listed as a synonym for "use." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/ dictionary/use (last visited August 15, 2016); *see also Bailey v. United States*, 516 U.S. 137, 145 (1995) (including "employ" as a definition of "use").

Adopting the plain meaning of the term "use," we agree with the district court that the evidence presented by the government sufficiently established that Laursen used or employed J.B. to produce sexually explicit images. The pornographic photographs were produced after Laursen told J.B. that the two "looked good together" and that "*he* wanted to take pictures." (emphasis added). Importantly, J.B. testified that she did not enjoy taking pornographic pictures. J.B. also deleted pictures at Laursen's request. This evidence established that Laursen directed J.B.'s actions, at a minimum engaging in active conduct that resulted in the production of child pornography. *See Overton*, 573 F.3d at 692 (requiring proof of active *or* coercive conduct). Laursen is correct that there was no evidence presented of physical coercion. However, in view of the disjunctive language contained in *Overton*, active conduct alone suffices to sustain a conviction under § 2251(a). *See id.*

Our reasoning is consistent with the rulings of our sister circuits, which have broadly interpreted the "use" element of the statute. *See*, *e.g.*, *United States v. Sirois*, 87 F.3d 34, 42 (2d Cir. 1996) (defining "use" as occurring whenever a minor is the subject of the photography). Recently, the Sixth Circuit adopted the Second Circuit's interpretation of "use," similarly holding that this element is "fully satisfied for the purposes of the child pornography statute if a child is photographed in order to create pornography." *United States v. Wright*, 774 F.3d 1085, 1090 (6th Cir. 2014) (citation omitted). The Sixth Circuit explicitly rejected Wright's argument that the statute required proof of coercive conduct. *See id.* at 1091. The Eighth Circuit also agreed with the Second Circuit that the "use of a minor" element is satisfied even without solicitation or enticement if a defendant photographs a minor. *See United States v. Fadl*, 498 F.3d 862, 866 (8th Cir. 2007). In addition, the First Circuit recently upheld a defendant's conviction under § 2251 (a), even though he was in a consensual relationship with a fourteen-year-old, holding that "the statutory definition of 'use' is met when a defendant makes a minor the subject of a visual depiction by intentionally photographing the minor engaging in sexually explicit conduct." *Ortiz-Graulau v. United States*, 756 F.3d 12, 18–19 (1st Cir. 2014), *cert. denied*, 135 S. Ct. 1438 (2015).

Although application of the statute in these contexts may lead to harsh results, we echo the persuasive reasoning of the Seventh Circuit that "Congress may legitimately conclude that even a willing or deceitful minor is entitled to governmental protection from self-destructive decisions that would expose him or her to the harms of child pornography." *United States v. Fletcher*, 634 F.3d 395, 403 (7th Cir. 2011), *as amended* (citation and internal quotation marks omitted).

Finally, Laursen's theory that he was not the man depicted in the photographs is unconvincing. J.B. identified Laursen as the man in the photographs, and testified that no one else took sexually explicit photos of her. Laursen's sister and brother-in-law also identified Laursen as the man pictured in the photographs. And it was especially telling that Laursen asked detectives: "I can really get in trouble for the pictures I took with her?"

Based on the evidence presented, the district court's finding that Laursen used a minor in the production of pornography was not clearly erroneous. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support the district court's verdict of guilt. *See Gonzalez*, 528 F.3d at 1211.

## B. Constitutional Challenges

Laursen contends that 18 U.S.C. §§ 2251 and 2252A[5] as

---

[5] 18 U.S.C. § 2252A provides in pertinent part:

(a) Any person who . . .

(5)(B) knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer. . . shall be punished as provided in subsection (b).

applied are vague, overbroad, violate the Tenth Amendment, and exceed Congress' power under the Commerce Clause. These challenges are primarily predicated on Laursen's belief that his conduct with J.B. was legal under Washington law. The governing Washington statute provides that "[a] person is guilty of rape of a child in the third degree when the person has sexual intercourse with another who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim." Wash. Rev. Code § 9A.44.079. Thus, Laursen's sexual relationship with J.B. was legal under state law because she was not "less than sixteen years old." *Id.* However, a separate Washington statute provides that "[a] person is guilty of sexual exploitation of a minor" if the person "[a]ids, invites, employs, authorizes, or causes a minor to engage in sexually explicit conduct, knowing that such conduct will be photographed . . ." Wash. Rev. Code § 9.68A.040. Consequently, in the state of Washington, Laursen's sexual relationship with J.B. was legal but the production of pornography stemming from that relationship was not.

### 1. Overbreadth Challenge

Laursen contends that the child pornography statutes at issue are overbroad because he has a protected privacy interest in taking intimate photographs in the course of a consensual sexual relationship. We disagree. A consensual sexual relationship between adults is constitutionally protected. *See, e.g.*, *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972). However, that constitutional protection has not been extended to sexual relationships between adults and children. *See, e.g.*, *Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (distinguishing cases involving minors). In any event, the

prohibited conduct engaged in by Laursen was producing pornographic material involving J.B., not simply engaging in a sexual relationship with her. And the Supreme Court has made it crystal clear that child pornography is not constitutionally protected. *See New York v. Ferber*, 458 U.S. 747, 763 (1982). At the same time, the Supreme Court has recognized that protecting children from sexual abuse and exploitation constitutes a particularly compelling interest of the government. *See id.* at 757. Given that J.B. was a minor, using her to produce pornography is unquestionably prohibited conduct, and Laursen's overbreadth challenge fails. *See id*. at 773 (explaining that a statute "whose legitimate reach dwarfs its arguably impermissible applications" is not overbroad).

### 2. Vagueness Challenge

"To avoid being unconstitutionally vague, a penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. . . ." *United States v. Schales*, 546 F.3d 965, 972 (9th Cir. 2008) (citation and internal quotation marks omitted). A statute is void for vagueness under the Due Process Clause of the Fifth Amendment if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement . . . ." *United States v. Williams*, 553 U.S. 285, 304 (2008) (citations and internal quotation marks omitted). We have no doubt that a person of ordinary intelligence would know that 18 U.S.C. § 2251(a) prohibits using a minor to engage in sexually explicit conduct for the purpose of producing a photograph of the sexual conduct, and

that § 2252A prohibits possessing child pornography. *See id.* at 306. In sum, we are not persuaded that the statutes of conviction are unconstitutionally vague.

### 3. Tenth Amendment Challenge

Laursen's Tenth Amendment challenge is premised on the theory that the federal statutes under which he was prosecuted usurp the state's authority to determine the age of consent for engaging in sexual relations. Laursen relies on the Supreme Court's recent decision in *Bond v. United States*, 134 S.Ct. 2077 (2014). In *Bond*, the Supreme Court invalidated a conviction under the Chemical Weapons Implementation Act for what the court described as a "purely local crime[]." *Id.* at 2083. The defendant was a microbiologist who sought revenge on a romantic rival by spreading chemicals on the other woman's car door, mailbox and doorknob. *See id.* at 2085. The Supreme Court ruled that federalizing this "common law-assault" "would dramatically intrude upon traditional state criminal jurisdiction." *Id.* at 2087–88.

We are not convinced that the Supreme Court's *Bond* decision dictates a similar outcome in this case. As a preliminary matter, we note that the Supreme Court has accepted the federalization of child pornography crimes by upholding convictions brought under 18 U.S.C. § 2252A. *See e.g.*, *Williams*, 553 U.S. at 291, 308. More importantly, the facts of this case differ markedly from the facts in *Bond*. In this case, the statutes of conviction include an interstate nexus, *see, e.g.*, 18 U.S.C. § 2252(A)(a)(5), whereas in *Bond*, the defendant was prosecuted for a garden variety assault that is ordinarily prosecuted under state law. *See Bond*, 134 S.Ct. at 2087–88. For these reasons, we reject Laursen's Tenth Amendment challenge.

### 4. Commerce Clause Challenge

It is settled precedent that "Congress could rationally conclude that homegrown child pornography affects interstate commerce, and therefore Congress may regulate even purely intrastate production of child pornography and criminalize its intrastate possession . . ." *United States v. Sullivan*, 797 F.3d 623, 632 (9th Cir. 2015), *cert. denied* 136 S.Ct. 2408 (June 6, 2016) (citation and internal quotation marks omitted). Therefore, we also reject Laursen's Commerce Clause challenge. *See id.*

## C. District Court's Evidentiary Rulings

Laursen argues that he was denied his right to present a defense by the district court's ruling that testimony relating to J.B.'s sexual relationships with other men was inadmissible. "As amended in 1994, Rule 412 of the Federal Rules of Evidence forbids the admission of evidence of an alleged victim's sexual behavior or sexual predisposition in all civil or criminal proceedings involving alleged sexual misconduct except under limited circumstances . . . ." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1104 (9th Cir. 2002), *as amended* (quoting Fed. R. Evid. 412) (internal quotation marks omitted). Admittedly, preclusion of evidence of a victim's past sexual abuse by others may violate a defendant's constitutional rights. *See LaJoie v. Thompson*, 217 F.3d 663, 670 (9th Cir. 2000), *as amended*. However, Laursen sought to question J.B. about possible sexual abuse by other men to support his theory that he was not the individual depicted in the photographs submitted by the government. The district court's ruling did not compromise Laursen's right to present this theory of defense, because Laursen was permitted to ask J.B. if anyone else had taken

sexually explicit photographs of her. He also questioned J.B. about her statements to detectives that her uncle photographed her performing sexual acts. The district court only precluded Laursen from asking whether J.B. had a sexual relationship with someone other than Laursen in 2012. The district court's ruling was consistent with our precedent because Laursen was "seeking to introduce the evidence as past behavior that was other than the offense charged." *United States v. Yazzie*, 59 F.3d 807, 814 (9th Cir. 1995) (emphasis omitted). Further, any error was harmless: there was an abundance of testimony to support the conclusion that Laursen was the man depicted in the photographs. *See id.*

Laursen's final contention—that the district court abused its discretion in excluding the proffered photograph of his body is unavailing. "If the district court finds that the testimony would waste time, confuse or not materially assist the trier of fact, or be better served through cross-examination or a comprehensive jury instruction, it has the discretion to exclude the testimony." *United States v. Vallejo*, 237 F.3d 1008, 1016 (9th Cir. 2001) (citation and internal quotation marks omitted). Excluding the proffered photograph was well within the discretion of the district court. Laursen argued that there was no visible scar on the man in the photographs with J.B. that were offered by the government, while the nude photographs he offered of himself showed a visible scar on his left hip. Nevertheless, there was no evidence presented as to when the scar came into existence. Consequently, the district court did not abuse its discretion in determining that the proffered photograph would not materially assist the judge in his capacity as the trier of fact. *See id.* at 1016.

## IV.    CONCLUSION

Sufficient evidence was presented by the government to sustain Laursen's convictions for the production and possession of child pornography.  The fact that Laursen's sexual relationship with J.B. was legal under Washington law did not legitimize the production and possession of child pornography under state or federal law.  Laursen's constitutional challenges lack merit, and the district court's evidentiary rulings were sound.

**AFFIRMED.**

HAWKINS, Circuit Judge, concurring:

Michael Laursen stands convicted of the "use" of a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct and is currently serving the fifteen-year mandatory minimum sentence the statute requires. The photos in question were taken in the course of an ill-advised, but perfectly legal,  relationship Laursen had with a young woman above the age of consent under Washington law.  The record shows no evidence that Laursen distributed, transferred or otherwise displayed the images to anyone outside that relationship.  In this respect, his situation is no different than the thousands of similar photos taken everyday by seventeen-year-old college students engaged in intimate, consensual relationships.   The government admits the theory of prosecution here could be used to prosecute anyone snapping a photo showing consenting individuals engaged in intimacy.

This is where I differ from my friends in the majority. To prevent the statute from being overbroad and unconstitutionally vague, I would adopt a narrower construction of the term "uses" in the statute. The government's construction implies that one "uses" the minor much as one "uses" a camera to take the photograph, and their mere presence in the photo could suffice. As the majority acknowledges, "uses" has a number of meanings in ordinary language. To me, the one most likely applicable here is: "to take unfair advantage of; exploit." *Use*, Dictionary.com, http://dictionary.reference.com/browse/use (last visited December 13, 2016); *see also* American Heritage Dictionary College Edition 1331 (2nd ed. 1991) ("to exploit for one's own advantage or gain"). Although I agree with the majority that "a word is known by the company it keeps," *Flores*, 729 F.3d at 915, in my view, the rest of the terms in the statute—employs, persuades, induces, entices or coerces— suggest that the defendant must have exerted some sort of improper influence on the minor for the purpose of producing the visual depiction of sexual conduct.

Whether that something more has been shown here is where I agree with my colleagues. At the time of the relationship, Laursen was forty-five years old and J.B. was only sixteen. While she was above the legal age of consent, this very significant age difference, combined with the other facts of this case—including her vulnerability from an already abusive relationship with her relatives, and evidence demonstrating that Laursen convinced J.B. that he was her "hero" and "mentor," all the while providing her with drugs and moving her from motel room to motel room and into the homes and bedrooms of strangers—provides sufficient indicia of a coercive or exploitative element to satisfy even the more narrow definition of "uses" I propose here.

Thus, I would require the government to show some "taking unfair advantage of" the minor to establish "uses" under this statute (where no other statutory element is present), but otherwise I concur in affirming Laursen's conviction and sentence on the facts of this case.