**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

ROBERT WAYNE HUTTON,

*Defendant - Appellant.*

No. 24-2202

D.C. No.
2:22-cr-00158-
MKD-1

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Mary K. Dimke, District Judge, Presiding

Argued and Submitted August 14, 2025
Anchorage, Alaska

Filed November 17, 2025

Before: Susan P. Graber, John B. Owens, and Ryan D.
Nelson, Circuit Judges.

Opinion by Judge R. Nelson;
Concurrence by Judge Graber

# SUMMARY[*]

## Criminal Law

The panel affirmed Robert Hutton's conviction for sexually exploiting a minor in violation of 18 U.S.C. § 2251(a).

Hutton argued that the videos and images of the victim are not "lascivious" under the statutory definition at 28 U.S.C. § 2256(2)(A)(v). The panel held that, as Hutton conceded, this contention is foreclosed by Circuit precedent. The district court, which analyzed the factors set forth in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), did not clearly err in finding that the images were "lascivious," and thus depicted "sexually explicit conduct" under § 2251(a).

Hutton argued that § 2251(a) is unconstitutionally vague as applied to him—that a plain-text reading of § 2251(a) does not convey that the statute prohibits secretly filming a nude child in her bathroom. The panel held that this court's precedent forecloses this argument. *See United States v. Laursen*, 847 F.3d 1026, 1034 (9th Cir. 2017); *Wiegand*, 812 F.2d at 1243; *United States v. Mendez*, 35 F.4th 1219, 1221 (9th Cir. 2022).

Hutton argued that he did not "use" the victim when he filmed her without her knowledge—that because he did not *cause* the victim to engage in sexually explicit conduct, he

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

cannot be guilty of violating § 2251(a). The panel held that this court's precedent forecloses this argument. *See Laursen*, 847, F.3d at 1030, 1032; *Mendez*, 35 F.4th at 1221; *United States v. Boam*, 69 F.4th 601, 608 (9th Cir. 2023). The panel rejected Hutton's argument that *Dubin v. United States*, 599 U.S. 110 (2023), which interpreted the federal aggravated-identity-theft statute, 18 U.S.C. § 1028A(a)(1), effectively overruled this court's "use" cases. *Dubin*'s holding on the meaning of "use" in § 1028A(a)(1) has little bearing on this court's holdings on the meaning of "use" in the context of § 2251(a).

Concurring in full, Judge Graber wrote separately to state her view that judicial interpretations of § 2251(a) have drifted far from the statutory text. Rather than continuing to rely on the Judiciary to stretch the meaning of this statute to cover nearly all deplorable conduct by pedophiles, Congress might consider clarifying criminal liability in this area of the law.

## COUNSEL

Ian L. Garriques (argued), David M. Herzog, and Ann Wick, Assistant United States Attorney; Vanessa R. Waldref, United States Attorney; Office of the United States Attorney, United States Department of Justice, Spokane, Washington; for Plaintiff-Appellee.

Justin Lonergan (argued) and Ryan M. Farrell, Attorneys, Federal Defenders of Eastern Washington & Idaho, Spokane, Washington, for Defendant-Appellant.

## OPINION

R. NELSON, Circuit Judge:

Robert Hutton captured nude images and videos of his 14-year-old stepdaughter through a hidden camera he had placed in the bathroom of his home. Following a bench trial on stipulated facts, Hutton appeals his conviction for sexually exploiting a minor in violation of 18 U.S.C. § 2251(a). We affirm.

I

For roughly a year, Robert Hutton used a hidden camera he had placed in the bathroom of his home to record several nude videos and images of his 14-year-old stepdaughter (the victim) without her knowledge. One set of five video clips—depicting the victim showering—was edited to include only those moments when she was visibly nude rather than obscured behind the shower curtain. The victim became suspicious when Hutton's phone connected to the entertainment system in his truck, revealing a file titled "[victim's name] – sex." She confronted Hutton, later discovered the images on Hutton's phone, and reported the images to police. She also reported that Hutton had made comments that made her uncomfortable, including that she had "nice long hair, don't ever cut it" because "women with long hair are sexy."

Police executed a search warrant at Hutton's residence and seized several electronic devices, including the hidden camera in the bathroom. A forensic review revealed evidence of child pornography dating back a decade, including images and videos of more minors, including at least one prepubescent child under the age of 12.

The Government charged Hutton with sexually exploiting the victim in violation of 28 U.S.C. § 2251(a).[1] Hutton pleaded not guilty and proceeded to a bench trial on stipulated facts. The district court accepted the stipulation and reviewed the images and videos seized from Hutton's devices. After the Government rested its case, Hutton filed a written motion for a Rule 29 judgment of acquittal, arguing that the evidence could not show that he "use[d]" the victim under § 2251(a) or that the depictions were "lascivious exhibition[s]." Hutton also moved orally to dismiss the charge on the ground that § 2251(a) is unconstitutionally vague as applied to his case.

The district court denied Hutton's Rule 29 motion and found him guilty. In doing so, the court found that the depictions of the victim were "lascivious exhibition[s]" within the meaning of federal law. Later, the court issued a written order denying Hutton's oral motion to dismiss the § 2251(a) charge on vagueness grounds, concluding that our precedent foreclosed the issue. The court sentenced Hutton to 20 years' imprisonment, and this timely appeal followed. We have jurisdiction under 28 U.S.C. § 1291.

## II

Section 2251(a) of Title 18 criminalizes the sexual exploitation of a minor:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual

---

[1] The Government also charged Hutton with possession of child pornography based on the discovered material depicting other minors. Hutton pleaded guilty to that offense, which is not at issue on appeal.

> depiction of such conduct . . . shall be
> punished as provided under subsection (e).

Subsection (e), in turn, sets a 15-year mandatory minimum sentence for first-time offenders. 18 U.S.C. § 2251(e). Congress defined "sexually explicit conduct" to include the "lascivious exhibition of the anus, genitals, or pubic area of any person." *Id.* § 2256(2)(A)(v).

Hutton raises three arguments on appeal. First, the images of the victim are not "lascivious" under the statute. Second, § 2251(a) is unconstitutionally vague as applied to him. And third, the evidence cannot show that he "use[d]" the victim under § 2251(a). Each argument fails.

## A

First, Hutton argues that the videos and images of the victim are not "lascivious" under the statutory definition. *See id.* § 2256(2)(A)(v). We review questions of statutory interpretation de novo. *United States v. Youssef*, 547 F.3d 1090, 1093 (9th Cir. 2008) (per curiam). Whether depictions "fall within the statutory definition [of sexually explicit conduct] is a question of fact as to which we must uphold the district court's findings unless clearly erroneous." *United States v. Overton*, 573 F.3d 679, 688 (9th Cir. 2009) (quoting *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987)).

Hutton concedes "that existing Circuit precedent forecloses this issue." Therefore, he acknowledges that he raises it only to preserve it for further review. Hutton is correct.

In *Wiegand*, we held that "lasciviousness is not a characteristic of the child photographed but of the exhibition

which the photographer sets up for an audience that consists of himself or likeminded pedophiles." 812 F.2d at 1244. And, in *United States v. Boam*, we held that the district court did not clearly err when it rejected the defendant's argument that secret recordings of a minor victim in the shower were not "lascivious" because they were "strictly hygienic" and "not sexual in nature." 69 F.4th 601, 608 (9th Cir. 2023).

These holdings endorse six "general principles as guides for analysis," known as the *Dost* factors. *United States v. Hill*, 459 F.3d 966, 972 (9th Cir. 2006) (quoting *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom. Wiegand*, 812 F.2d at 1245). Although "neither exclusive nor conclusive," *id.*, the *Dost* factors provide a "starting point for determining whether a particular image is lascivious." *United States v. Perkins*, 850 F.3d 1109, 1121 (9th Cir. 2017). Factors relevant here include the first, "whether the focal point of the visual depiction is on the child's genitalia or pubic area"; fourth, "whether the child is fully or partially clothed, or nude"; and sixth, "whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Id.* (quoting *Dost*, 636 F. Supp. at 832); *see also Boam*, 69 F.4th at 609–11, 614 (affirming based on these three factors).

Those factors support the district court's finding that the images here were "lascivious exhibitions." *See Boam*, 69 F.4th at 609. To start, the district court explained that Hutton had a "demonstrated sexual interest in children," considering he was "previously convicted of communicating with a minor for immoral purposes."[2] The district court also noted

---

[2] In 2009, Hutton pleaded guilty in Washington state court to Communication with a Minor for Immoral Purposes, Wash. Rev. Code § 9.68A.090. Hutton committed that crime by having sexual

that Hutton possessed other child pornography; made sexual comments about the victim's hair; used a naming convention for the depictions that "was indicative of a sexual interest" in the victim; placed a hidden camera so that the "primary focus of the shot" was where the victim would enter or exit the shower; and curated the recorded material so that it would contain only depictions of the victim's nude body.

The district court then applied these facts to the *Dost* factors. First, the court concluded that "[t]here's no doubt that" the "focal point of the visual depiction is on the child's genitals or pubic area." As to the fourth factor, the court found "numerous depictions and videos where [the victim] is nude." And on the sixth factor, the court considered "the motive of the photographer." The court's prior factual findings easily supported motive. Hutton's history of "sexual interest in children," "the particular curation" of the images, "the specific direction of where the camera was," and "the nature of what was retained versus what was not retained" were all "indicative of Mr. Hutton's intent with respect to why [the] photos were taken and the purpose behind them." The court concluded that, under *Dost*'s sixth factor, the depictions "were designed to elicit a sexual response" in Hutton.

Relying on its analysis of the *Dost* factors, the district court found that the images of the victim were "lascivious," and thus depicted "sexually explicit conduct" under § 2251(a). That conclusion was not clearly erroneous. *See Boam*, 69 F.4th at 609–12 (citing the same factual considerations at play here); *see also id.* at 612–13 (citing

---

conversations with a friend's 15-year-old daughter, making comments to the minor about her hair and his preference for girls with long hair, just as he did to the victim in this case.

cases from five other circuits holding that surreptitious bathroom recordings of a child's genitals could be lascivious exhibitions).

## B

Second, Hutton contends that § 2251(a) is void for vagueness as applied to him. In his view, a plain-text reading of § 2251(a) does not convey that the statute prohibits secretly filming a nude child in her bathroom. A statute is void for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). We review de novo whether a statute is void for vagueness. *United States v. Shetler*, 665 F.3d 1150, 1164 (9th Cir. 2011).

Our precedent also forecloses Hutton's vagueness argument. In *United States v. Laursen*, we rejected a vagueness challenge to § 2251(a) because there is "no doubt that a person of ordinary intelligence would know that 18 U.S.C. § 2251(a) prohibits using a minor to engage in sexually explicit conduct for the purpose of producing a photograph of the sexual conduct." 847 F.3d 1026, 1034 (9th Cir. 2017); *see also Free Speech Coal. v. Reno*, 198 F.3d 1083, 1087 (9th Cir. 1999) ("The language of 18 U.S.C. §§ 2251 and 2252 has survived overbreadth and vagueness challenges.").

We also held in *Wiegand* that "lascivious" is not vague, concluding that the term "is no different in its meaning than 'lewd,' . . . whose constitutionality was [twice] upheld" by the Supreme Court. 812 F.2d at 1243 (citations omitted); *accord United States v. Adams*, 343 F.3d 1024, 1035–36 (9th Cir. 2003). More recently, we held in *United States v.*

*Mendez* that hiding a camera in a child's private space is "active conduct in the heartland of a statute criminalizing the production of child pornography." 35 F.4th 1219, 1221 (9th Cir. 2022). Considering our precedent and considering that no circuit court has found § 2251(a) void for vagueness, Hutton's vagueness challenge fails. Hutton had ample notice that secretly recording a 14-year-old girl while she is fully nude in the bathroom violated the statute.

C

Third, Hutton maintains that he did not "use[]" the victim when he filmed her without her knowledge. Because § 2251(a) punishes "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct," Hutton argues that "uses"—when read alongside the other verbs in the statute—requires a causal connection. And because Hutton did not *cause* the victim to engage in sexually explicit conduct (rather, he secretly viewed her going about her daily business), he cannot be guilty of violating § 2251(a).

Our precedent also forecloses Hutton's third argument. In a series of cases, we have adopted a broad definition of "uses" that covers the exact conduct here.[3] First, in *Laursen*, we confronted whether the defendant "use[d]" the victim by taking consensual nude photos with her in front of a mirror. 847 F.3d at 1030, 1032. Noting that the "term 'use' is

---

[3] So have other circuits. *See, e.g.*, *United States v. Wright*, 774 F.3d 1085, 1089 (6th Cir. 2014) (agreeing with the Second, Fourth, and Eighth Circuits that the "use" element is satisfied "if a minor is photographed in order to create pornography"); *United States v. Steen*, 634 F.3d 822, 826 (5th Cir. 2011) (holding that a defendant "clearly used" a minor when he secretly recorded her "for the purposes of producing a nude video").

not defined in § 2251(a)," we began with the "traditional rules of statutory interpretation," including "the plain and common meaning of the word derived from dictionary definitions." *Id.* at 1032. The "most relevant" definition, we explained, is "to put into action or service [;] avail oneself of [;] employ." *Id.* (quoting Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/use (last visited Aug. 15, 2016)) (alterations in original). We "confirm[ed]" that "plain meaning" by looking to context. *Id.* Applying the associated-words canon, *noscitur a sociis*, we reasoned that "one of the other means of violating the statute, 'employ[ing]' a minor, is listed as a synonym for 'use.'" *Id.* (citing, *e.g.*, *Bailey v. United States*, 516 U.S. 137, 145 (1995) (including "employ" as a definition of "use")). Under the plain meaning of "use," then, we found sufficient evidence to support the conviction. No more was required than "active conduct that resulted in the production of child pornography." *Id.* at 1032–33.

We expanded on this holding in *Mendez*. There, the defendant placed hidden cameras in a teenage girl's bedroom and filmed her masturbating. 35 F.4th at 1220. We reasoned that the "active conduct" required under *Laursen* "is that of the perpetrator, not the target of the visual depiction." *Id.* at 1221. And by placing the cameras in the victim's bedroom, the defendant engaged in "active conduct in the heartland of a statute criminalizing the production of child pornography." *Id.* We acknowledged that *Laursen* did not speak directly to "surreptitious photographing." *Id.* at 1222. But we were still bound by "the broad interpretation of § 2251(a) adopted in *Laursen*," even though some jurists "writing on a clean slate" might interpret the statutory text to "require[] the perpetrator to *cause* the minor to engage in sexually explicit

conduct." *Id.* at 1222–23 (quotation omitted). *Mendez* rejected Hutton's argument that the defendant had to cause the victim's conduct.

If doubt remained, it fell away completely when our decision in *Boam* applied this rule to conduct identical to the conduct here. The defendant in *Boam*—like Hutton—placed a hidden camera in a bathroom to obtain nude images of his 14-year-old stepdaughter. 69 F.4th at 604–05. Also like Hutton, the defendant positioned the camera so that it would capture the victim's nude body as she showered and otherwise used the bathroom.[4] *Id.* at 605. Pointing to *Laursen* and *Mendez*, we reasoned that "[w]e, along with our sister circuits, 'broadly' interpret the 'use' element of § 2251(a)." *Id.* at 607 (quoting *Laursen*, 847 F.3d at 1033). Applying that interpretation, we concluded that the evidence of the defendant's secret recordings was sufficient to support a finding that he "attempted to 'use' [the victim] in violation of § 2251(a)." *Id.* at 608.

Hutton appears to recognize that his case is indistinguishable from *Boam* and our prior caselaw. So he argues instead that the Supreme Court effectively overruled our "use" cases in *Dubin v. United States*, 599 U.S. 110 (2023).

In *Dubin*, the Supreme Court interpreted the federal aggravated-identity-theft statute, which applies when a defendant, "during and in relation to any [predicate offense],

---

[4] The only relevant distinguishing fact in *Boam* is that the defendant instructed the victim to use the bathroom in which the cameras had been hidden. 69 F.4th at 605. That makes no difference. Under *Laursen* and, more specifically, *Mendez*, the "active conduct" satisfying the "use" element is placing a hidden camera where the defendant knows a child will be nude. *See Mendez*, 35 F.4th at 1221.

knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." *Id.* at 115 (quoting 18 U.S.C. § 1028A(a)(1)) (alteration in original). The question in *Dubin* was what it means to "use[]" a means of identification "in relation to" a predicate offense. *Id.* at 118. The Government supplied a broad definition: a means of identification is "used" if it "facilitates or furthers" the predicate offense in some way. *Id.* at 117 (cleaned up). The petitioner offered a narrower definition: using a means of identification requires "a genuine nexus to the predicate offense." *Id.*

In choosing between the two definitions, the Court began with the term "uses" itself. *Id.* at 118. The "ordinary or natural meaning" of "use," the Court explained, is "variously defined as to convert to one's service, to employ, to avail oneself of, and to carry out a purpose or action by means of." *Id.* (cleaned up); *cf. Laursen*, 847 F.3d at 1032 (adopting a nearly identical definition). The Court derived that definition from *Bailey*. *Dubin*, 599 U.S. at 118 (quoting *Bailey*, 516 U.S. at 145); *cf. Laursen*, 847 F.3d at 1032 (citing *Bailey*, 516 U.S. at 145). The Court then noted that "'use' takes on different meanings depending on context," and so courts will look "to the statute and the [surrounding] scheme, to determine the meaning Congress intended." *Dubin*, 599 U.S. at 118 (quoting *Bailey*, 516 U.S. at 143) (alteration in original). Applying those principles to § 1028A(a)(1), the Court reasoned that the parties' competing views of "uses"—"taken alone"—did not compel a result. *Id.* at 119. "Resort to context" was thus "especially necessary" in interpreting § 1028A(a)(1). *Id.*

The Court then "look[ed] to [the] surrounding words." *Id.* at 120. After addressing the statute's title, *id.* at 121, the Court turned to the other verbs in § 1028A(a)(1). Applying

*noscitur a sociis*, the Court reasoned "that 'uses' should be read in a similar manner to its companions"—"transfer" and "possess." *Id.* at 126; *cf. Laursen*, 847 F.3d at 1032 (applying *noscitur a sociis*). Because those verbs connoted theft, *Dubin*, 599 U.S. at 125, and because the statutory context was "in relation to" a predicate offense, the Court adopted the petitioner's "more precise" reading of "uses" in § 1028A(a)(1), *id.* at 127. The Court did not decide whether any one of these "[interpretive] points, standing alone, would be dispositive." *Id.* at 131. But together, they were "not amenable" to the Government's reading of the specific statute under review. *Id.*

*Dubin*'s holding on the meaning of "use" in the context of § 1028A(a)(1) has little direct bearing on this court's holdings on the meaning of "use" in the context of § 2251(a). Just because Congress codified a given definition in a fraud statute does not mean that it did the same for a child-exploitation statute. Even Hutton agrees: "A definition that is appropriate in the aggravated identity theft context isn't appropriate in the very different context of § 2251(a)."

Small wonder then that *Dubin*'s analysis addressed the specific statute under review. The Court reasoned that "uses," standing alone, did not "conclusively resolve *this case*." 599 U.S. at 118 (emphasis added); *see also id.* at 119 ("Resort to context is thus especially necessary here."). The Court did not hold that the meaning of "use" would be similarly indeterminate each of the thousands of times it appears in the United States Code. *Cf. United States v. Schreck*, 130 F.4th 1297, 1303 (11th Cir. 2025) (declining to import *Dubin*'s definition of "use" to passport fraud because of "differences between the statutory text"); *United States v. Rivers*, 108 F.4th 973, 980 (7th Cir. 2024) (holding that *Dubin* left the circuit's § 924(c) precedent undisturbed

because the relevant terms, including "use," are "context dependent"). Otherwise, *Dubin*'s emphasis on the "statutory context" would ring hollow. *E.g.*, 599 U.S. at 118–19.

Nor is *Dubin*'s "theory or reasoning" inconsistent, let alone "clearly irreconcilable," with *Laursen* and its progeny. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). *Laursen* applied the same interpretive method as *Dubin*, beginning with the ordinary meaning of "uses." Both decisions built on that meaning by resorting to context— each court used *noscitur a sociis* to deduce meaning from the other verbs in the statute. And *Laursen* and *Dubin* both defined "use" (at least in part) with quotations from *Bailey*. Though *Dubin* held that Congress intended a narrow definition of "uses" in § 1028A(a)(1), its bottom-line approach to interpreting the statute was effectively the same as what we did in *Laursen*.

Hutton's contention that *Laursen* "simply stopped at the dictionary definition" ignores that we did not rely on dictionaries alone. We also supported our reading with "the other means of violating the statute." *Laursen*, 847 F.3d at 1032 ("a word is known by the company it keeps" (citation omitted)). One of those means—"employ[ing]" a minor—is listed as a synonym for "use," thus confirming the term's "plain meaning." *Id. Dubin* took a similar tack. The Court pointed to the "two neighboring verbs" ("transfers" and "possesses") and used their association with theft to interpret "uses" in "a similar manner." *Dubin*, 599 U.S. at 125–26. Nothing in that analysis is in tension, let alone clearly irreconcilable, with our § 2251(a) caselaw.

Nor, as Hutton suggests, is *Dubin*'s emphasis on contextual interpretation anything new. Courts have long emphasized that "the words of a statute must be read in their

context." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989). And over a decade before *Laursen*, the Supreme Court explained that "when interpreting a statute that features as elastic a word as 'use,' we construe language in its context and in light of the terms surrounding it." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004); *see also Bailey*, 516 U.S. at 143 ("[T]he word 'use' poses some interpretational difficulties because of the different meanings attributable to it."). *Dubin* tracks this reasoning. 599 U.S. at 118. For that reason, it is hard to see how we are bound by a new interpretive method that is clearly irreconcilable with our prior "use" cases, which were decided after Supreme Court cases identical to *Dubin*.

At bottom, nothing in *Dubin* disturbs our precedent interpreting § 2251(a). The presumption under *Miller* is against overruling circuit precedent: "If we can apply our precedent consistently with that of the higher authority, we must do so." *FTC v. Consumer Def., LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019). Even if there were "some tension" between *Laursen* and *Dubin*, that would not be enough to treat *Laursen* and its progeny as effectively overruled. *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073, 1074 (9th Cir. 2018) ("Nothing short of 'clear irreconcilability' will do."). Because Hutton's reliance on *Dubin* does not come close to meeting *Miller*'s "high standard," *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (citation omitted), his "uses" argument is foreclosed by our precedent.

## III

Our § 2251(a) precedent remains good law after *Dubin*. And because our precedent forecloses each of Hutton's arguments, we affirm.

**AFFIRMED.**

---

GRABER, Circuit Judge, concurring:

I concur in full in the opinion.

I write separately to state my view that judicial interpretations of 18 U.S.C. § 2251(a) have drifted far from the statutory text. That trend is perhaps understandable because the conduct at issue in cases of this sort is reprehensible and criminal. But by giving an expansive interpretation of a statute that carries a 15-year statutory minimum, we have done work ordinarily assigned to the legislature: deciding which crimes deserve which punishments. Rather than continuing to rely on the Judiciary to stretch the meaning of this statute to cover nearly all deplorable conduct by pedophiles—at increasing risk of the Supreme Court's overruling our cases—Congress might consider clarifying criminal liability in this area of the law. Clear statutory text would aid prosecutors, courts, and victims.

Relevant here, the statute criminalizes:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct[.]

18 U.S.C. § 2251(a). Our cases have stretched the meaning of that text in two distinct but related ways.

1. The statute appears to contemplate that the defendant's actions must <u>cause</u> the minor to engage in sexually explicit conduct. Read most naturally, all six verbs in the statute suggest causation. Take the final four verbs: a defendant who persuades, induces, entices, or coerces a victim to engage in sexually explicit conduct clearly has brought about the victim's conduct. Those verbs cannot reasonably be read without implying causation.

The remaining two verbs—the first two in the statute—are an awkward fit for the rest of the sentence: a defendant who employs or uses a victim to engage in sexually explicit conduct. Read in isolation, the sentence could be read as meaning that <u>the defendant</u> must engage in sexually explicit conduct. But no one suggests that Congress had that intent. Instead, the statute requires <u>the minor</u> to engage in sexually explicit conduct.

So how does a defendant employ or use someone else to engage in specific conduct? Read most naturally, a defendant would employ or use the victim by actively causing the victim to engage in that conduct. Congress did not criminalize a defendant who employs or uses a minor <u>who is engaging</u> in certain conduct; the statute criminalizes a defendant who employs or uses a minor <u>to engage</u> in the conduct. If Andrew employs or uses his neighbor to engage in building a fence, the use of the phrase "to engage" strongly implies that Andrew has caused the result of his neighbor's building the fence. The words "employ" and "use" can, of course, have expansive meanings, so it is possible to read the phrase as encompassing any time a minor is engaging in sexually explicit conduct. But once "employ" and "use" are read in context with the other four verbs and with the infinitive "to engage," it seems unlikely that Congress intended that all-encompassing meaning.

Stepping back from the details, judicial interpretations have rendered the beginning of the statute to mean "whenever a minor engages in sexually explicit conduct" without <u>any</u> regard for the defendant's actions. Here, for example, the victim used the same bathroom and shower that she customarily used; Defendant's actions played no role in the victim's conduct. It is possible that Congress intended to encompass any situation in which a minor engages in sexually explicit conduct. But, if so, Congress chose a roundabout and confusing way of accomplishing that result, especially by phrasing the statute in terms of whenever <u>the defendant</u> takes an action and by using the phrase "to engage."

2. The statute requires that the minor engage in "sexually explicit conduct," which Congress defined to include "lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v). We have noted that "lascivious" means "tending to excite lust; lewd; indecent; obscene." <u>United States v. Gnirke</u>, 775 F.3d 1155, 1161 n.2 (9th Cir. 2015) (quoting <u>Black's Law Dictionary</u> (9th ed. 2009)). Our cases have expanded the meaning of this statute to encompass everyday ordinary behavior, such as a person entering and exiting a shower, even if the person has no sexual thought or intent whatsoever. We ordinarily would not call such conduct "lewd" or "obscene." I am not the first to make this point. <u>United States v. Donoho</u>, 76 F.4th 588, 601–02 (7th Cir. 2023) (Easterbrook, J., concurring); <u>United States v. Hillie</u>, 38 F.4th 235, 236 (D.C. Cir. 2022) (Wilkins, J., concurring in the denial of rehearing en banc); <u>id.</u> at 236–41 (Katsas, J., concurring in the denial of rehearing en banc); <u>United States v. Steen</u>, 634 F.3d 822, 828–30 (5th Cir. 2011) (Higginbotham, J., concurring).

Our cases nevertheless interpret the statute to encompass quotidian activities in two questionable ways. First, when determining whether the conduct was lascivious, we look not merely at the conduct itself; we also inquire into the viewer's subjective frame of mind. Second, when analyzing the conduct, we do not assess the victim's conduct only; instead, we inquire into how the defendant has captured and manipulated the video or image of the conduct.

That inquiry is far from the statutory text, which asks whether the victim "engage[d] in . . . sexually explicit conduct." 18 U.S.C. § 2251(a). We do not ordinarily say that a person has engaged in a certain type of conduct by looking to the state of mind and the later activities of a person who was secretly watching that conduct.

Moreover, as this case illustrates, those factors often are determinative as to whether the minor engaged in sexually explicit conduct. Here, for example, we inquire into Defendant's state of mind by looking into his past criminal conduct and by assessing his past comments to the victim; and we look at how he later edited and labeled the videos and images. Those factors certainly strike at Defendant's moral and criminal culpability generally. But it is a stretch to say that those factors—which look to the past, the future, and the image rather than the conduct—play a role in the narrow question whether the victim was engaging in sexually explicit conduct at a specific moment in time. And what it all means is that, so long as one of the specified body parts is nude, any commonplace activity—entering the shower, using the toilet, getting dressed, and so on—could qualify as "lascivious."

Putting it all together, judicial interpretations of § 2251(a) mean that, whenever a child is nude throughout

the ordinary course of a day, a person who captures that image could be guilty of producing child pornography. Congress very well could have intended that result. But it is difficult to square that result with the words that Congress chose.